Samuel G. **TOWNES**, Appellant,

v.

C. C. **PEYTON**, Superintendent of the Virginia State Penitentiary, Appellee.

No. 11927.

United States Court of Appeals
Fourth Circuit.

Argued March 4, 1968.

Decided Nov. 22, 1968.

Waller H. Horsley, Richmond, Va. (Court-assigned counsel) [Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief], for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and RUSSELL, District Judge.

BOREMAN, Circuit Judge:

Samuel G. Townes, a Virginia prisoner, is serving a life sentence upon his conviction on a plea of guilty to a charge of rape. He did not appeal his conviction but later filed his habeas corpus petition in the state court and relief was denied after he had been afforded an evidentiary hearing. The Supreme Court of Appeals of Virginia denied review and Townes filed the first of two petitions in the district court for a writ of habeas corpus. The record and transcript of the petitioner's state habeas corpus proceeding were made available. This first habeas action in the district court bore that court's number 4810–M and disposition thereof was made, without a hearing, by a written memorandum opinion

and an order denying relief. The appeal now before us is from the district court's denial of relief on a second petition which bore the district court's number 5071.

Townes, a 42-year-old Negro, was arrested in September 1959 and charged with the rape of a 23-year-old white woman in Mecklenburg County, Virginia, a rural county in the southern part of the state. Shortly after his arrest Townes orally admitted to the Commonwealth's attorney that he had had intercourse with the prosecutrix but denied using force, making the exculpatory claim that she had consented. The statement made by Townes was subsequently reduced to writing and signed by him. However, there was strong evidence to corroborate the victim's charge of force. The principal evidence was her condition. A neighbor to whose house she fled after the alleged rape reported that she was badly beaten, in a daze, and that she needed medical attention. She was examined by a doctor who would have been available to testify at a trial and whose testimony would tend to corroborate her story.

Two local attorneys had been appointed to represent Townes but his family later retained two well-known Negro attorneys of Virginia and appointed counsel were permitted to withdraw.[1] Retained counsel conferred with Townes a number of times and explained his right to a jury trial and the nature of the available pleas. They obtained a continuance of the case and it was not tried until several months after they were retained. One of the attorneys conducted the principal investigation. He talked not only with Townes but with Townes' parents and every person who, according to his information, might have any knowledge of the case. He conferred two or three times with the Common-

wealth's attorney, Mr. Dortsch, who cooperated in every way. Dortsch made available to counsel all of the information which the prosecution had and provided them with a copy of Townes' statement together with a list of the Commonwealth's witnesses. After investigating, counsel frankly admitted to the Commonwealth's attorney that they could develop no plausible defense,[2] and conferred at length with him concerning Townes' possible plea of guilty and likely sentence. Dortsch did not state at any time whether he would or would not seek the death penalty if Townes pleaded not guilty but he made clear his position that in view of the brutal beating which the victim had received, he would not favor a sentence of less than life imprisonment even upon a plea of guilty. Counsel, however, were desirous of obtaining a lesser sentence of a definite term of years which would favorably affect later parole consideration and their discussions centered primarily on this point. The attorneys, reviewing the case with Townes, made known the position of the Commonwealth's attorney, and advised him to plead guilty. According to the attorneys, one of the factors that led to this advice was their belief that since Townes was a Negro and the prosecuting witness was white he would very likely be convicted and receive a death sentence if he were to stand trial.

The state habeas court found that the attorneys who represented Townes were experienced and capable; that the plea of guilty was voluntary and that it was supported by evidence which clearly showed the guilt of the accused.

In the first federal habeas corpus proceeding (No. 4810–M below) the petition was less than artfully drawn and Townes was not represented by counsel. The petition stated three grounds: (1) "In-

---

1. At the instance of counsel Townes was sent to a state hospital for mental examination and observation and was later reported as competent to stand trial.

2. In the district court hearing Townes attacked the voluntariness of his statement,

not as an independent ground for relief, but because the statement, although exculpatory, was of extreme significance in limiting the tactics and influencing the decisions of trial counsel. The district court found the statement to have been voluntarily given.

adequate and ineffective assistance of counsel," (his lawyer told him it was best for him to plead guilty because if he pleaded not guilty "they may give your petitioner the death penalty"); (2) the confession (plea of guilty) was obtained under duress due to the nature of the offense; the petitioner had no free choice but entered a plea of guilty to "literally" save his life; (3) the denial of a fair and impartial trial, apparently on the theory that his guilt was prejudged before the introduction of evidence. The district court, in its written opinion, stated its conclusion that the gist of Townes' complaint was that he pleaded guilty under duress. Townes had testified in the state habeas court that his lawyers told him that unless he did plead guilty he would be executed because he, a Negro, was charged with raping a white woman. The district court further concluded that the concern of Townes' lawyers that he would receive the death penalty at the hands of a jury on a plea of not guilty did not itself render the plea of guilty involuntary; the lawyers had investigated the case thoroughly; they did not believe Townes to be innocent—they were simply recommending that a person they believed to

be guilty should plead guilty. The court stated:

"Townes pleaded guilty and he was sentenced to life imprisonment. At the time he pleaded guilty neither he nor his lawyers disclosed to the court or to the Commonwealth's attorney that any racial consideration played a part in the decision to plead guilty. The plea was represented to the court as a voluntary plea.

\* \* \* \* \* \*

"From an examination of the record and transcript of the state habeas corpus proceeding, the court has reached the conclusion that a further plenary hearing is not necessary. Townsend v. Sain, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963)."

The order denying relief on the first petition was entered on November 16, 1966.

A little more than one month later, a new petition (No. 5071 below), the one before us on appeal,[3] was filed in the district court on December 23, 1966. Strangely, in response to a question in the printed form of petition—"Before this petition have you filed with respect to this conviction any petition for habeas

---

3. In the instant case the grounds for relief as stated in the petition were:
"Confession of guilt was coerced by matters not relevant to guilt as follows:
a. Racial discrimination in a case of alleged rape of white woman by Negro man with almost certain death penalty at hands of an all white jury. Defendant was forced to plead guilty in order to save his life.
b. Counsel's advice re guilty plea was influenced by known racial discrimination and accused's alleged post-arrest admission made (if at all) during a period of oppressive confinement.
c. Systematic exclusion of Negroes from the jury made fair trial impossible. Although Negroes represent 50% of the County's population, only one Negro was on the jury panel of 20 available for this trial."
Under a heading in the petition which called for a listing of each ground which had been presented to a state court were the following:

"a. Racial discrimination.
b. Counsel's advice as influenced by known racial discrimination and alleged post-arrest admission.
c. Not presented in detail (an all white jury was assumed by all in the State Court hearing.)"
Under another heading of the petition which called for a listing of each ground set forth in the petition which had not been presented to a state court and the "reasons why it was not," the following appears:
"a. Systematic exclusion of Negroes from the jury: Natural reluctance of local appointed counsel to pursue such matters in the trial court."
It does appear from the record in the state habeas corpus case that the parties were proceeding upon the *assumption* that the petitioner would have had an all white jury in the event of a trial although the record contains no evidence to warrant such a conclusion.

corpus in a Federal Court?"—the petitioner answered "No." Counsel was appointed to represent Townes and a hearing was later ordered and held notwithstanding the filing and disposition of the first petition of which petitioner, counsel and the court were fully aware.

In testimony in the state habeas hearing and in depositions in the instant case Townes' attorneys both stated that they would not have advised him to plead guilty if he had been white or if the prosecutrix had been a Negress, and that the principal factors which prompted their advice were the almost certain "racial composition of the courtroom" and the high incidence of the death penalty for Negro defendants in such cases. It is Townes' contention that his decision to enter a guilty plea was not based upon consideration of the facts or the law of his case but was reached solely because of his desire to escape the death penalty and because of those racial factors which his counsel believed would have denied him a fair trial. For these reasons he argues that his plea was coerced and involuntary.[4]

At the hearing below, in an effort to show a pattern of racial discrimination in jury selection which allegedly resulted in all-white juries, evidence concerning the process of jury selection in Mecklenburg County was presented. Evidence was also introduced in an effort to show the high percentage of Negroes among persons executed in Virginia, especially among those executed for rape.

The district court filed no written opinion herein but stated its findings and conclusions orally from the bench. Reviewing the evidence with respect to conferences between Townes' counsel and the Commonwealth's attorney and Townes' contention that whites only would have served on the jury and Negroes would have been excluded, the court stated:

"The attorneys representing Townes were anxious to get a sentence of less than life and it was on the difference between a life sentence and a sentence of a term of years that the conferences over a period of time were held with the Commonwealth's attorney. They were not held with regard to the possibility of a death sentence.

\*   \*   \*   \*   \*   \*

"The lawyers at that time did not challenge the jury list. They did not examine the list to see the racial composition of the jury. There is a conflict in the evidence as to whether the agreement to plead guilty was made before the panel was ever selected from the entire list. Be that as it may, the lawyers had a difficult time remembering whether they had ever checked it, but they were of the impression there were some Negroes on the panel. They were concerned that these Negroes would be struck. The Commonwealth's attorney has testified, and there is no evidence to the contrary, that it is not his practice now, and was not his practice then, to strike Negroes from the jury when a Negro defendant is on trial. There would have been Negroes on the jury that tried Townes had he been tried by a jury if the court accepts both the testimony of Townes' attorneys about the composition of the list, and accepts the testimony of the Commonwealth's attorney as to his practice. The court accepts this testimony."

4. The district court found that at the time Townes' lawyers were preparing for trial, his defense as outlined by his counsel was as follows:
   "Well the accused had intimated a prior relationship with this particular prosecutrix. And, as I recall, she wanted him to take her to South Hill or some place. And on this particular occasion he admitted that he had rela-
tions with her. And his explanation was that what had occurred as to her physical condition was due to the fact that her husband must have beaten her up, because he said he hadn't. And he said that she was lying on him because he had refused to help her get away from her husband. That would have been his story, as best I can recall it."

The court found that, consistent with Virginia law, the jury lists in Mecklenburg County have not been maintained over the years since a new list is prepared annually by the jury commissioners and the old list destroyed. Further reviewing the evidence the court found and concluded:

"The evidence does not disclose a systematic exclusion of Negroes from the jury. Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965); Whitus v. Georgia, 385 U.S. 545 [87 S.Ct. 643, 17 L.Ed.2d 599] (1967). A conviction is invalid if it is based on an indictment of a grand jury or the verdict of a trial jury from either of which Negroes were excluded by reason of their race. 18 U.S.C. § 243; Strauder v. West Virginia, 100 U.S. 303 [25 L.Ed. 664] (1880); Whitus v. Georgia, 385 U.S. 545 [87 S.Ct. 643, 17 L.Ed.2d 599] (1967). A discrepancy between the number of Negroes in the county and the number on the jury list makes a prima facie case that the state must meet. Whitus v. Georgia, 385 U.S. 545 [87 S.Ct. 643, 17 L.Ed.2d 599] (1967); Bostick v. South Carolina, 386 U.S. 479 [87 S.Ct. 1088, 18 L.Ed.2d 223] (1967) (per curiam). The court concludes that the state has borne the burden of showing no purposeful exclusion. There would have been, the evidence shows, Negro jurors on this panel. The Commonwealth's attorney would not have struck those jurors. The defendant would have been tried by a jury that included Negroes."

The lawyers representing Townes were not from Mecklenburg County and the court found that they had not tried any significant number of cases in that county; further, that the evidence did not show that any Negro prior to that time had been sentenced to death in Mecklenburg County for a crime similar to the one with which Townes was charged. Noting the fact that statistics were not complete because pertinent data were not available, the court observed that from the years 1951 through 1960 seven Negroes were convicted of rape of white women in Virginia and, of these, four received noncapital sentences for a term of years or life and three were executed. In summarizing the court stated:

"The court therefore concludes that the state did not coerce this plea of guilty. The plea was made after careful consideration with very able counsel who thoroughly investigated the case and told the Commonwealth's attorney they had no defense to the case. The defense that Townes was urging was at best most difficult whether the parties be white or Negro. The defense that consent was given and the husband beat the prosecuting witness is not an easy defense to present if both the husband and the prosecuting witness deny it. Once intercourse was admitted, that type of defense would have been hard to maintain even if the parties had been white. Townes' lawyers recognized the seriousness of their client's position and negotiated a plea of guilty. The state did not systematically exclude Negroes from the jury that would have tried Townes if he had asked for a jury. During certainly the past five years the state did not execute all Negroes which were convicted of raping white women. A majority received penitentiary sentences as did Townes. The court concludes that the writ should be denied."

Thus the district court, having determined that there would have been Negroes on the jury had Townes gone to trial, and that there was no showing of a practice of racial discrimination in sentencing, reached the conclusion that the lawyers negotiated a plea of guilty because they recognized the seriousness of their client's predicament and the futility of relying upon the only defense which was available under the circumstances.

Notwithstanding the court's findings and conclusions, Townes advances the argument that the proper test to be applied in determining whether a plea is coerced or voluntary is necessarily subjective; that it was his honest belief that the racial factors as he understood

them would operate to deny him a fair trial and would almost certainly result in a death sentence; and, that this belief is a sufficient basis upon which to predicate a finding of a coerced plea since coercion necessarily involves consideration of the factors *as they affected his thinking and ultimate decision.* In support of this proposition he relies on a recent district court decision, United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967). Because of his testimony that he honestly believed the representations and predictions of his counsel, he contends that it is totally immaterial whether, as a matter of fact, the jury might not have been all white or whether Negroes do not invariably receive the death penalty in Virginia for the rape of white women.

We reach the conclusion that Townes' claim that his plea was coerced must fail. The purely subjective test set forth in *Mancusi* is inappropriate here. When a defendant alleges, as in *Mancusi*, that his guilty plea was induced by a threat or promise specifically directed to him through his attorney, the defendant's honest belief that such a threat or promise was made is ordinarily sufficient to render the plea invalid. When, however, a defendant claims that his plea was generated by fears of a general pattern of discriminatory official behavior (such as invidious racial practices in jury selection or in punishment), his belief in the reality of such a threatening pattern, unsupported by any objective evidence of its existence, is not necessarily enough to invalidate the plea. The very vagueness of the defendant's claim of fears stemming from a general practice of discrimination points up the inherent potential for abuse if such claims were to be accepted at face value without further inquiry. A person seeking relief from a guilty plea on the ground that he felt compelled to tender it in order to escape the consequences of an unconstitutional policy or practice may fairly be expected to show not only his belief that he would be denied fair treatment if he chose to stand trial, but also that the belief had at least some foundation in fact.

Here, the record does not provide the requisite foundation. At trial, Townes' counsel did not challenge the composition of the grand or petit jury. The prosecutor's evidence tended to support the nondiscriminatory character of the jury selection procedure and this was not negatived by evidence on behalf of Townes in the habeas corpus proceeding. Nor did the appellant adduce adequate statistical or other proof to support the claim of a policy of racial discrimination in sentencing.

Concededly, the existence of a state policy of systematic racial discrimination, if proven, would constitute an improper influence, and any plea induced thereby would unquestionably be void. This record, however, is bare of proof of the claimed discrimination.

We hold only that where an accused asserts that he was led to plead guilty by the fear of a breakdown of the judicial system, rather than a fear of a specific threat directed at him, it is imperative that he offer something more than mere assertion to indicate the existence of the situation which he allegedly fears.

We are not to be understood as rejecting the "subjective test" in all cases. Indeed, we recognize that there may be appropriate occasions for its invocation; but for the reasons indicated we think that on this record the petitioner's exclusive reliance on the subjective test cannot avail him. His honest belief in the existence of an utterly unproven pattern of official behavior is in the present circumstances insufficient to invalidate the plea.

Affirmed.