Joe Louis PEETE, Petitioner,

v.

Jimmy ROSE, Warden, Respondent.

Civ. No. C–74–194.

United States District Court,
W. D. Tennessee, W. D.

Sept. 24, 1974.

Sam F. Cole, Jr., Memphis, Tenn., for petitioner.

Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

This is a habeas petition filed by Joe Louis Peete, a prisoner of the State of

Tennessee, who is serving a sentence for rape and assault to commit murder imposed after a guilty plea in the Criminal Court of Shelby County (Memphis). Petitioner has exhausted his state remedies: he has processed a post-conviction proceeding in state criminal court, relying on the same grounds for relief there as he is relying on here, and the Tennessee Court of Criminal Appeals affirmed the state trial court's denial of post-conviction relief, one judge dissenting.[1] Both petitioner and respondent agree that the evidentiary hearing held in state trial court is sufficient, and both move for a summary judgment here. Argument has been had by appointed counsel for petitioner and counsel for respondent and the cause submitted for decision.[2]

Petitioner's contention is that he was inadequately represented by two public defenders and that his plea of guilty was not voluntarily, knowingly and understandingly entered.

It appears, after his indictment on March 10, 1970 for rape and for assault to murder a police officer, petitioner's initially appointed counsel, Mr. Mercer, asked Mr. Draper, another public defender, to act as co-counsel with him since the state was seeking the death penalty. Mr. Draper, who is now deceased, was more experienced than Mr. Mercer, and such assistance was the practice in capital cases. They investigated the case thoroughly and, as a result of the investigation, became convinced that the state could prove the following.

On February 27, 1970, at about 8:00 p. m., a young white woman who lived in a downtown high rise apartment in Memphis, was returning to it after a shopping trip on foot when petitioner, a black man, seized her on the sidewalk and proceeded to pull her off. The woman screamed and fought back, escaped twice and was recaptured and severely beaten, and her screams alerted some persons in a nearby restaurant. These persons saw petitioner dragging her away. The police were called, and when they promptly arrived, petitioner was caught in the act of raping the woman in a nearby vacant area. Petitioner then ran but stopped when the officers fired at him, and petitioner indicated that he desired to surrender. However, petitioner attacked one of the officers with a knife when they proceeded to take him into custody, but he was finally overpowered.[3]

Petitioner's counsel were unable to find any witnesses to support petitioner's denial of guilt. An alibi defense was, of course, not possible. Counsel considered as a defense (or, more accurately, as a factor in mitigation) the character of the victim, but she proved on their investigation to be a woman of good reputation.

Petitioner, nevertheless, continued to insist that he was innocent and therefore his counsel subpoenaed witnesses suggested by him (apparently members of his family) and prepared for a trial set for June 23, 1970. Petitioner did, however, give them permission to obtain an offer for a plea bargain; the first offer obtained was 99 years and later an offer of 75 years was obtained, both declined by petitioner. On the morning of June 23, when both sides were ready for trial, petitioner's counsel obtained a much better offer: a sentence of life on the rape charge and 3 to 21 years on the assault to murder charge to run concur-

---

1. Petitioner filed a second post-conviction proceeding on the same grounds while the first one was pending on appeal. It was dismissed without an evidentiary hearing and the dismissal was affirmed. This proceeding need not be considered here.

2. The record consists of the technical record (i. e. pleadings, orders, etc.) in the state criminal and the state post-conviction pro-

ceedings (Vol. 1), the transcript of testimony in the post-conviction evidentiary hearing (Vol. 2), and the exhibits to the post-conviction evidentiary hearing (Vol. 3), which includes a transcript of the entry of the guilty plea.

3. Petitioner's skull was fractured when the police struck him with a flashlight which resulted in his being placed in the hospital.

rently. This offer was much better because under a "life" sentence the prisoner is eligible for parole in twelve and one-half years. Petitioner, who finished high school in an Illinois Correctional Institution and who was in his middle twenties, agreed to accept this offer and executed the form explaining his rights and acknowledging that his rights had been explained to him, stating the provisions of the plea bargain, and requesting that he be allowed to waive the jury and enter a guilty plea. However, when asked by the court if he was pleading guilty because he was guilty, petitioner answered that he was not guilty, and the court announced that they would begin the trial that afternoon.

Shortly thereafter, it is undisputed that petitioner's counsel, Mr. Draper, told petitioner that he had "fucked up," that he could get a "Ku Klux jury" that might give him the chair, and that he was unlikely to get any blacks on the jury as a result of their reluctance to serve due to the financial sacrifice.[4] Petitioner interpreted this statement to mean he would surely get a Ku Klux jury that would give him the chair if he went to trial. Petitioner then went before the court that afternoon and entered a plea of guilty which the court accepted when he stated that he was in fact guilty.[5]

As stated, petitioner's contention in the state courts was, as is his contention here, that upon his entry of the guilty plea he was inadequately represented by court appointed counsel and that his plea was not voluntarily, knowingly and understandingly entered.[6]

The majority of the Tenessee Court of Criminal Appeals, as stated, affirmed the state trial court in denying relief in the postconviction proceeding. The majority saw the issue to be whether, in view of the admonitions made to petitioner by his counsel, petitioner's plea of guilty was voluntarily entered.[7] The dissenting judge on that court, on the other hand, saw the issue to be whether, in view of such admonitions, his counsel had failed to represent petitioner adequately. We agree with the majority as to the real issue presented. Certainly petitioner's counsel had investigated the case thoroughly, they had prepared for trial as well as they could under the difficult circumstances presented, they had obtained an offer for a plea bargain that was, under the circumstances, an extremely favorable one, and they had advised petitioner in no uncertain terms that he would be a fool to decline the offer and to go to trial. It is true that, in an effort to prevent petitioner from making what his counsel correctly considered would be a catastrophic mistake in going to trial, some strong language was used to him and no doubt the peril to which petitioner would be exposed, with respect to the composition of the

---

4. Draper testified at the post-conviction hearing, however, that he had had as many as seven blacks on a criminal jury. There is no contention here that as a matter of fact there was systematic discrimination against blacks in jury service.

5. Petitioner was advised by his counsel that, unless he admitted his guilt, the judge would not allow him to plead guilty. However, petitioner maintained his innocence to his counsel.

6. Petitioner also complained at the state post-conviction hearing that he had, on the day the criminal case was set, desired a continuance and had been told by his counsel that such would not be granted. It is clear that there was no ground for a continuance and, in any case, the failure of counsel to apply for such was not asserted in state court and is not asserted here as a basis for the claim of inadequate representation.

7. It is absolutely clear that petitioner understood the nature of the charges and the implication of the guilty plea. He had read and had had explained to him the application that he executed to be allowed to plead guilty. Moreover, the trial judge explained this again and petitioner stated that he understood. No contention was made at argument here that the plea was not made knowingly and understandingly. Petitioner had undergone criminal trials before.

jury, was overstated.[8] However, there was no inadequate representation here; indeed, it appears that petitioner received first-rate representation.

In dealing with the question whether petitioner's plea was voluntarily entered, the majority of the Tennessee Court of Criminal Appeals pointed out that in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a guilty plea is not constitutionally invalid simply because it is entered to avoid the possibility of capital punishment or simply because it is entered by one who continues to deny his guilt. That court went on to hold, therefore, and we think correctly, that petitioner's plea of guilty was not constitutionally invalid because he was induced to do so partly to avoid the possibility of capital punishment or because he affirmed to the state trial judge that he was in fact guilty only to induce him to accept the plea of guilty, although that court pointed out that it would have been the better practice to tell the trial judge that petitioner desired to plead guilty but did not want to admit his guilt. The majority opinion went on to say, with respect to his counsel's remarks to him, that it did not believe " . . . that counsel literally meant what was said . . ." and concluded that the plea was voluntarily entered.

Petitioner's principal reliance here is on Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971). That case, however, is really based on inadequacy of representation in that appointed counsel there, who had not investigated the case and who had not prepared for trial, persuaded his client to plead guilty on the day the case was set for trial. Here petitioner's case, as stated, had been thoroughly investigated and his counsel were ready for trial.

In Brady v. United States, 397 U.S. 742, at 755, 90 S.Ct. 1463, at 1472, 25 L.Ed.2d 747 (1970), the court said:

"The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:

'[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresestation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).' Shelton v. United States, 5 Cir., 242 F.2d 101, at page 115."

The issue here, then, in determining whether petitioner's guilty plea was voluntary, turns on whether it was induced by "threats" made by his own court-appointed counsel.

█ It should be observed that there was a tension here between the duty of counsel to advise or even to persuade petitioner to follow the course that was in petitioner's clear interest to follow and the requirement that a guilty plea be voluntary on the part of petitioner. Here petitioner's counsel thought that petitioner was about to make a great and foolish mistake in going to trial and felt impelled to induce him to accept the favorable plea bargain. However, we construe *Brady, supra,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, and related cases (see Annotation, Validity of Guilty Pleas—Supreme Court Cases, 25 L.Ed.2d 1025) to indicate that, where the line is crossed and the guilty plea is induced by threats, the plea is invalid as being involuntary. We recognize that, in Townes v. Peyton, 404 F.2d 456 (4th Cir. 1968), cert. denied 395 U.S. 924, 89 S.Ct. 1778, 23 L.Ed.2d 241 (1969), which

8. As heretofore stated, Negroes regularly served on juries. By referring to a "Ku Klux jury," counsel no doubt meant to imply that there might be white persons on the jury who, because of the racial context, would be inclined to deal very severely with petitioner; but it is clear that petitioner took his counsel's statement literally.

presented facts quite similar to those in the instant case, counsel's threat was held not to invalidate a guilty plea; the reasoning of the court was that such threat would not invalidate the guilty plea unless there was a factual basis for it. Here, as in *Townes,* there is no showing that there was a factual basis for the threat with respect to the composition of the jury. (See, *contra* to *Townes,* United States ex rel. Brown v. La Vallee, 301 F.Supp. 1245 (S.D.N.Y. 1969)). This court simply cannot square the holding in *Townes* with the subsequent language of the Supreme Court in *Brady, supra,* and related cases.[9]

■ We conclude that this plea was induced by threats. While we suspect the Tennessee Court of Criminal Appeals was right in stating that petitioner's counsel did not actually intend his admonitions to petitioner to be taken literally, it is clear that petitioner, with reason, so took them and believed that he would have a "Ku Klux jury" that would give him the chair and was induced by this threat to plead guilty. Such is indeed a threat. It results that petitioner is entitled to the relief.

■ This court is aware that the result here is probably unfortunate for petitioner in that, assuming the prosecution can procure the witnesses who were available in 1970, petitioner's going to trial now would be as great a mistake as it would have been in 1970 for there is a high probability of his receiving a much more severe penalty than he received on his guilty plea. But this is petitioner's choice which under the Constitution he must be allowed to exercise freely and voluntarily.

The Clerk will enter a judgment providing that the petitioner must be discharged from custody unless: (1) respondent timely appeals, in which case this judgment will be stayed or (2) petitioner is put to trial within 90 days.

---

9. For example, one can imagine a case in which counsel threatened his client that he would be lynched if he did not plead guilty and the client, believing counsel, was induced to so plead. Certainly, to invalidate the plea, it would not be necessary to prove that there was a basis in fact for the threat.