Cecil **LOVEDAHL**, Appellant,

v.

**STATE OF NORTH CAROLINA,**
Appellee,

No. 9354.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 22, 1964.

Decided Nov. 12, 1964.

Richard C. Carmichael, Jr. Charlotte, N. C. (Court-assigned counsel), for appellant.

Theodore C. Brown, Jr., Asst. Atty. Gen. of North Carolina (Thomas Wade Bruton, Atty. Gen. of North Carolina, on the brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and SIMONS, District Judge.

PER CURIAM:

Habeas corpus was denied by the District Court for the release of Cecil Lovedahl from the custody of the North Carolina Mental Hospital which holds him under commitment of the State Board of Paroles, and he appeals. His present detention originated with a life sentence passed in October, 1946 in an appropriate North Carolina criminal court upon a plea of guilty as an accessory before the fact of murder. The instant application was grounded on two assertions: (1) that the plea was entered by counsel without and against Lovedahl's consent, and (2) that he was not mentally capable of understanding the proceedings in the criminal court. He contends that his conviction was, therefore, lacking in Constitutional due process. No question is here raised of a failure first to pursue all State remedial steps.

Upon considering Lovedahl's petition and his custodian's answer, the District Court found dispositive of the application the findings and denial made and ordered by a former judge of the same court in 1955, the last previous Federal habeas corpus sought by Lovedahl. Relying upon 28 U.S.C. § 2244, the District Judge—not without reason—felt he was not required to look into the detention of Lovedahl again. He was satisfied that the instant petition presented nothing not theretofore tendered and decided, and that the ends of justice did not demand further inquiry.

Ordinarily the course pursued by the District Court would be entirely proper. Certainly, we cannot say it should not have found that the plea of guilty was authorized by Lovedahl, provided he appreciated its effect and consequences. However, it is not altogether clear that at the prior hearing (1955), the question of Lovedahl's mental competency to be tried was fully considered. True, the implication of the findings in that hearing is that, when the plea of guilty was entered, the accused was capable of grasping the nature of the proceedings and consulting with his counsel. Nevertheless, on the record before us there is a lurking doubt whether that question was then specifically explored—apparently because it may not have been separately and explicitly pressed before the District Court. This uncertainty compels us to request the District Judge to inquire specially upon this issue, and unless it was previously developed fully and to his satisfaction, to take complete evidence on the mentality of Lovedahl at the time of trial. In any case he will, of course, state his own conclusions thereon.

We are persuaded to this course, despite the provisions of 28 U.S.C. § 2244, by the undisputed background facts.

The victim of the homicide was a close friend and was helpfully driving home a wildly drunken Lovedahl. With the now deceased at the wheel and no one else in the car except Lovedahl in the rear seat, his gun was discharged into the back of the front seat, and the bullet penetrating it and entering the driver's body, caused his death.

Lovedahl, enlisting in the United States Army at the age of sixteen, had been sent overseas in the Second World War. Following active combat as a paratrooper, he suffered a self-inflicted injury. After hospitalization in England he was returned to the United States for treatment of a nervous condition. He was discharged, with a 20% disability pension for wounds and for a nervous condition.

While the test of his mental competency at the time of the crime, August 22, 1946, is not the same standard required for trial, yet when the trial—October 6, 1946—was less than two months after the crime, his mentality in August obviously does have some weight in the ascertainment of the quality of his mind in October. When sentenced to life imprisonment he was twenty years old. He had an 8th grade education. His lawyer, an attorney of reputation and standing, in testifying to the voluntariness of Lovedahl's plea stated that in his opinion Lovedahl was not entirely normal mentally.

Moreover, in a proceeding in June 1953 under the North Carolina Post Conviction Hearing Act, the presiding judge expressed grave concern about the mental capacity of Lovedahl on August 22, 1946. Thereafter, the sentence was commuted to a term of years. The current parole was conditioned upon his commitment for observation in the State Mental Hospital.

For these reasons, to repeat, we think it advisable for the District Judge to determine the mental state of Lovedahl at the time of his plea, taking evidence as we have requested and giving such weight as he may deem proper to the evidence, if any, adduced at the prior hearing. To this end the judgment on review must be vacated and the case returned to the District Court for action in accordance with this opinion.

Vacated for further inquiry.