**UNITED STATES of America ex rel. Daniel BUTTCHER, Petitioner,**

v.

**Howard YEAGER, Warden of Prison, Respondent.**

**Civ. A. No. 1018–67.**

United States District Court
D. New Jersey.
Aug. 30, 1968.

## OPINION AND ORDER

COOLAHAN, District Judge:

This is an application for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., which the court has permitted the petitioner to file in forma pauperis. Petitioner is currently confined to the New Jersey State Prison, at Trenton, New Jersey, where he is serving a sentence of life imprisonment for murder; sentence was imposed by the Middlesex County Court on June 6, 1966.

■ Because petitioner pleaded non vult to the charges against him, he did not appeal his conviction. Instead, he filed a petition for post-conviction relief, pursuant to R.R. 3:10A, with the Middlesex County Court. This application was denied by that court, and ultimately by the New Jersey Supreme Court. Because petitioner has exhausted his state remedies all the way to New Jersey's highest court, it becomes clear that he is properly before this court, with respect to issues litigated in his state appeal. See 28 U.S.C. § 2254; Fay v. Noia, 372

U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner here claims that there was constitutional error in his conviction, in that: 1) his plea was induced by promises of counsel that he would be sentenced to no more than 30 years in state prison; 2) sentence imposed on the petitioner was unlawful, in that his plea of non vult to the charges against him could only effect a conviction of second degree murder; 3) the state law defining the punishment for murder is unconstitutional in that it unduly encourages defendants such as the petitioner to plead non vult to indictments charging them with murder. It is the court's view, however, that all three of these claims are without merit.

■ Petitioner's first constitutional complaint—promises of counsel—was considered extensively by the Middlesex County Court during the petition for post-conviction relief. That court held a hearing on the subject, giving petitioner a full opportunity to support his position. He determined not to take the stand during the hearing, relying instead on his own affidavit and that of his father, Charles Buttcher. The witness for the state was petitioner's attorney, Francis J. Lutz, Esq. He was examined and cross-examined thoroughly. At the end of the hearing it was the court's finding that:

> it is a fact that this defendant pled guilty with full knowledge of the implication of the sentence without any promise having been made to him by anyone. * * *

> I'm sure that he [Mr. Lutz] conveyed to the defendant perhaps a hope that it might be limited to twenty to thirty years, but I'm sure that Attorney Lutz notified this defendant that he, Lutz, had received no promises from the Court, and that the plea when made was made with the full realization by this defendant of the possibility of his getting a life sentence.

Tr. at 45–47. This court, after a review of the post-conviction relief proceedings,

determines that the Middlesex County Court's finding that no promises were made to the petitioner to induce his plea of non vult was thoroughly reasonable and in accord with the evidence adduced at the hearing. As a result, no habeas corpus will issue on this particular constitutional claim by the petitioner.

■ Petitioner's contention as to the illegality of his sentence is likewise invalid. It is his contention that permission for the trial judge to sentence a defendant pleading non vult to life imprisonment (the sentence for first degree murder) is inconsistent with the presumption, in New Jersey law, that a murder is of a second-degree variety. As perceived by this court, the question presented is one of solely New Jersey law, which has been determined against petitioner's position,[1] and no constitutional problem can be seen. Habeas corpus relief will not be granted here either.

■ Petitioner's last argument in support of his application for issuance of a writ of habeas corpus raises some interesting questions. Citing the recent decision of the United States Supreme Court in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968),[2] which involved the constitutionality of death penalty provisions of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), petitioner contends that the New Jersey death penalty statute, like the Federal Kidnapping Act, unduly encourages pleas of guilt (here, non vult) from defendants, in violation of due process of law under the Fifth Amendment and the right to a jury trial granted by the Sixth Amendment of the United States Constitution. This issue was decided against the petitioner's position by the New Jersey Supreme Court in the decision of State v. Forcella, 52 N. J. 263, 245 A.2d 181, July 3, 1968, which distinguished provisions of the New Jersey statute from those of the federal

Act. It is not necessary that this court consider whether the *Jackson* case is applicable to the New Jersey statute, for, in the court's view, even assuming that *Jackson* were applicable, there is nothing in the *Jackson* opinion which indicates that retroactivity of the rule of law announced in that opinion would be either necessary or proper.

The proper rule of law on the question of retroactivity was recently stated by the Supreme Court of the United States in the decision of Stovall v. Denno, 388 U.S. 293, 296–297, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967):

Our recent discussions of the retroactivity of other constitutional rules of criminal procedure make unnecessary any detailed treatment of that question here. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, supra; Tehan v. United States ex rel. Shott, [382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453,] supra; Johnson v. State of New Jersey, [384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882,] supra. "These cases establish the principle that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application' * * *." Johnson, supra, 384 U.S., at 726–727, 86 S.Ct. at 1777. The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

It is this court's view that the petitioner in the present case fails to come up to the standards enunciated in *Stovall* in every respect; as a result, the *Jackson* decision will not compel this court to grant the writ of habeas corpus sought in the present case.

---

1. See State v. Sullivan, 43 N.J. 209, 203 A.2d 177 (1964); State v. Walker, 33 N.J. 580, 166 A.2d 567 (1960).

2. Actually, petitioner relies on the lower court decision in the Jackson case, 262 F.Supp. 716 (D.Conn.1967).

Firstly, it is the court's view that the purpose to be served by the new constitutional standard established by the *Jackson* case is not one which has traditionally caused the Supreme Court to find retroactivity. Unlike cases where the new constitutional rule was for the purpose of guarding the integrity of the fact finding process, such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the purpose of the United States v. Jackson case was to insure that there be no compelled waiver of the constitutional right to a jury trial. As stated in *Stovall:*

> We have also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. * * * The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a "question of probabilities." 384 U.S., at 729, 86 S.Ct. at 1778. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity on the administration of justice.

388 U.S. at 298, 87 S.Ct. at 1970. Even if it be assumed that the right to a jury trial sought to be guarded by the *Jack-son* decision is in itself a right which seeks to insure integrity in the fact finding process, this court, considering the "question of probabilities," finds that there is no great probability, in the course of ordinary criminal prosecutions, that a truly innocent defendant will plead guilty and accept life imprisonment for a crime which he knows he did not commit, irrespective of the fact that certain evidence may appear to point to his guilt.

In addition, the countervailing factors mentioned in the *Stovall* decision are *most strong in the circumstances of the present case.* There can be no doubt that the New Jersey courts and law enforcement authorities have, since 1893, relied on the present system by which defendants pleading non vult to a murder indictment cannot be sentenced to more than life imprisonment. See State v. Sullivan, 43 N.J. 209, 243, 203 A.2d 177 (1964). Furthermore, the effect on the administration of justice, should it be determined that the *Jackson* decision is both retroactive and applicable to the New Jersey murder statute, would be disastrous, as every convicted murderer in New Jersey who, at the scheduled time for his trial, pleaded non vult to the indictment against him, would be forthwith released from incarceration. This court cannot conclude that the *Jackson* decision is retroactive.[3]

---

3. This determination is supported by the recent per curiam decision of the Supreme Court in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, June 17, 1968, wherein it was held that the recognition by the court in Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, May 20, 1968, and Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, May 20, 1968, that the Sixth Amendment right to a jury trial encompasses proceedings involving two years imprisonment for the defendant and "serious" contempt proceedings, is not retroactive. As stated by the Court in *DeStefano:*

> The values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amend-ment right to jury trial. Second, States undoubtedly relied in good faith upon the past opinions of this Court to the effect that the Sixth Amendment right to jury trial was not applicable to the States. * * * Third, the effect of a holding of general retroactivity on law enforcement and the administration of justice would be significant, because the denial of jury trial has occurred in a very great number of cases in those States not until now accepting the Sixth Amendment guarantee. For example, in Louisiana all those convicted of non-capital serious crimes could make a Sixth Amendment argument. And, depending on the Court's decisions about unanimous and 12-man juries, all convictions for serious crimes in certain other States would be in jeopardy.

Therefore, it is on this 30th day of August, 1968, ordered that the application of the petitioner, Daniel Buttcher, be and the same is hereby dismissed. The court finds that there is probable cause for appeal.