**Lowman QUILLIEN, Petitioner,**

v.

**William D. LEEKE, Director, South Carolina Department of Corrections, et al., Respondents.**

**Civ. A. No. 69–475.**

United States District Court
D. South Carolina,
Columbia Division.

Sept. 5, 1969.

Herbert M. Meeting, Columbia, S. C., Court-appointed attorney, for petitioner.

Daniel R. McLeod, Atty. Gen., Emmet H. Clair, Robert H. Hood, Asst. Attys. Gen., all of Columbia, S. C., for respondents.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

This is a petition in *habeas corpus* by a state prisoner who had consented to a jury verdict of guilty of an assault with intent to ravish with recommendation to mercy in the General Sessions

Court of Richland County, South Carolina. Under the terms of Section 16–72, Code of South Carolina (1962), the penalty for such crime is fixed at "death unless the jury shall recommend him to the mercy of the court in which event he shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years nor less than five years, at the discretion of the presiding judge."[1] After the consent verdict, returned by a duly impaneled jury, had been published, the petitioner was on May 30, 1955, sentenced by the presiding judge to confinement in the State Penitentiary for a term of 30 years and he immediately commenced the service of such sentence. He has since been confined under that sentence in the State Penitentiary, save when he was an escapee for about four years.

The petitioner is now 32 years of age. At the time of his arrest, he was 18. He finished the second grade in school, but, since his confinement, he apparently has followed with good results an educational program made available by the prison authorities. He appears reasonably intelligent and shows some familiarity with the law, a familiarity no doubt developed through his associations in the Penitentiary. After his arrest on the charge for which he was later sentenced, his family employed private counsel to represent him. No attempt was made by the petitioner or his counsel to secure the petitioner's release on bail. Indictment of the petitioner followed. It consisted of three counts, charging statutory rape, assault with intent to ravish and assault and battery. The petitioner was given a preliminary hearing, at which the father of the victim testified. The record of such proceeding is not before me but it is assumed that the petitioner was identified as the assailant in the charged crime. At the commencement of the following term of Court of General Sessions, the petitioner entered an initial plea of "not guilty". After reviewing with his retained counsel the evidence against him, the petitioner agreed to a consent verdict, as set forth above. According to the petitioner's testimony in one of his *habeas corpus* hearings, the victim of the assault was called as a witness and testified in connection with this consent verdict. It is to set aside this consent verdict, which was tantamount to a plea of guilty, as involuntary, that petitioner files this proceeding.

Since beginning the service of his sentence, the petitioner has filed three petitions in *habeas corpus* in the appropriate Circuit Court of South Carolina. All of them were dismissed as without merit. In the first two of these proceedings petitioner was represented by appointed counsel and was accorded an evidentiary hearing.[2] The third pro-

1. It would appear that Section 16–72, as it existed at the time of petitioner's sentence, required that a consent guilty verdict, whether with or without a recommendation to mercy, be submitted to an impaneled jury. The contrary view expressed in Cousar v. State (1967) 250 S.C. 47, 51, 156 S.E.2d 331, that a jury verdict was not required in a capital case was based on Section 17–553.4, enacted in 1962 and held unconstitutional in State v. Harper (1968) 251 S.C. 379, 383–384, 162 S.E.2d 712. Such a consent verdict in a rape case was submitted to the jury in State v. Vaughn (1913) 95 S.C. 455, 79 S.E. 312, affirmed 238 U.S. 612, 35 S.Ct. 940, 59 L.Ed. 1489, it being left to the jury to determine whether defendant, under such plea, was entitled to mercy, thereby escaping the death penalty. In State v. Worthy (1962) 239 S.C. 449, 464–465, 123 S.E.2d 835, 843, the defendant, professing to follow the defendant's action in the *Vaughn Case*, offered to consent to a jury verdict of guilty with recommendation to mercy. The Court remarked that under such a consent verdict, there "would have been no question for the jury to determine. * * * all that could have been done was for the Circuit Judge to sentence the appellant (defendant) to a term not exceeding forty years nor less than five years * * *."

2. In his testimony in this Court, the petitioner testified he had been given only one evidentiary hearing and had testified but once in the State Court proceedings. The official records, admitted in evidence

ceeding was dismissed without the appointment of counsel for the petitioner and without an evidentiary hearing. No appeal was taken from the order of dismissal entered by the Circuit Court in any one of the proceedings.

■■ In the first State proceeding, begun in 1959, the petitioner based his right to the writ on the claim that the Court had denied him the opportunity "to challenge the jurors," who had returned the consent verdict. However, in stating his claims at the evidentiary hearing given by the State Court, he contended, also, that the State had "refused to get my (his) witnesses" and asserted that the "witnesses that they have against me, they didn't even appear in Court." In addition, he testified that "during the time when I was tried, I haven't seen any jury." Considering these claims in reverse order, the official records of the Court, contrary to petitioner's claim, showed that a jury had been duly impaneled in the presence of the petitioner and his retained counsel.[3] Moreover, he later conceded his agreement to a consent verdict, thus contradicting his allegations in this regard. In stating his complaint about the failure of the State to secure his witnesses for trial he did not at this first hearing identify such witnesses. He did, though, identify, by their first, but not their family name, these alleged witnesses at the later hearing in the State

Court. They were the two persons who, he said, were with him on the night of the alleged crime. It was conceded by the petitioner in the hearing before this Court that both of these witnesses disappeared immediately after the alleged crime and, though both he and his lawyer, along with petitioner's brother-in-law, had made diligent inquiries about them, they could not be located. Perhaps these putative witnesses feared involvement in the prosecution. It may be remarked, too, that the petitioner's failure to identify them by family name raises some doubt even about their existence. It is clear, then, that, irrespective of whether it be deemed that the failure of the State to produce for petitioner his alleged witnesses is foreclosed by the guilty plea (see, Davis v. United States (C.C.A.Cal.1956), 237 F.2d 794, 795, cert. denied 352 U.S. 961, 77 S.Ct. 370, 1 L.Ed.2d 317), the fact remains that the petitioner could hardly complain of the State's failure to locate and therefore to produce such witnesses when the petitioner concedes his attorney and others acting for him could not ascertain their whereabouts. Finally, petitioner, when questioned further in this first State hearing, refuted his own earlier statement that no witnesses for the State against him "appear(ed) in Court"; he testified unequivocally that "in General Sessions Court the girl testified."[4] On this record, abundantly

without objection, show that this testimony is erroneous.

3. The rule seems to be that, absent any charge of fraud, the journal entry records of the proceedings in the State Court at the time of the impaneling of the jury and the consent verdict entered by the defendant import verity and are not open to challenge in a collateral proceeding such as this by parol testimony.

Tibbett v. Hand (C.C.A.Kan.1961) 294 F.2d 68, 72; Thomas v. Hunter (C.C.A. Kan.1946) 153 F.2d 834, 838; State v. Mayfield (1959) 235 S.C. 11, 23, 109 S.E.2d 716, cert. den. 363 U.S. 846, 80 S.Ct. 1616, 4 L.Ed.2d 1728; cf., however, Haacks v. Wainwright (C.C.A.Fla.1968) 387 F.2d 176, 178.

See, also, Townsend v. Sain (1963) 372 U.S. 293, 322, 83 S.Ct. 745, 762, 9 L.Ed.

2d 770: " * * * the state-court record is competent evidence, and either party may choose to rely solely upon the evidence contained in that record * * *."

By reason of later admissions of the petitioner, this issue loses any significance.

4. It would not have been of moment whether witnesses were called by the State or not, since the petitioner entered what was in effect a guilty plea. United States ex rel. Smith v. Russell (C.C.A. Pa.1966) 359 F.2d 795, 796, cert. denied 385 U.S. 876, 87 S.Ct. 154, 17 L.Ed.2d 103. In such circumstances, the defendant "cannot later be heard to contend that there was no evidence offered." Bartholomew v. United States (C.C.A. Minn.1961) 286 F.2d 779, 781.

Actually, his complaint on this score seems to have been that the person he

sustaining its conclusions, the Court found against the petitioner on all the grounds raised by him and dismissed his petition.

It should be noted, also, that, during his testimony in this first evidentiary hearing, the petitioner was closely questioned by the Court on his reasons for entering a plea of guilty. He testified that he knew that, under his plea, he could have been given a sentence of forty years of confinement.[5] Though the Court pressed him to say that his retained counsel had told him that his choice was to go to trial, in which event a guilty verdict would mean "the electric chair", or to enter a guilty plea, assuring him thereby a sentence for a term of years, the petitioner steadfastly clung to the statement that "I can't recall him telling me that." The petitioner, also, was asked by his appointed counsel at this hearing:

"Q. As I understand it, you were drunk at the time of the commission of this crime?

"A. I was."[6]

described as the State's "No. 1 witness" did not appear. This "No. 1 witness", it appears from the petitioner's testimony, was the complainant's mother and she became the "No. 1 witness", not because she knew more about the alleged assault than anyone else but because she was listed first on the group of witnesses endorsed on the back of the indictment. Obviously, the most important witness for the prosecution was the young lady, who, the indictment charged, was the victim of the attempted assault; and that was the witness who, according to the petitioner, did testify.

5. The record includes this colloquy between the petitioner and the Court:
"THE COURT: They could have given you 40 years.
"THE PETITIONER: Yes, sir, I know."

6. See, Shelton v. State of S. C. (1962) 239 S.C. 535, 538, 123 S.E.2d 867, 869: "Voluntary intoxication at the time of the commission of a crime will not invalidate a subsequent plea of guilty." To the same effect, Kelly v. Manning (1960) 237 S.C. 364, 368, 117 S.E.2d

At the evidentiary hearing on his second petition in the State Court, the petitioner and his retained counsel both testified. In this hearing, the petitioner raised the point that he had never knowingly plead guilty, "that he didn't consent to any of that and wanted a jury trial." He, also, renewed his previous claims as asserted in the earlier proceeding. It should be observed, in connection with the claim of the petitioner that he never understood that he was agreeing to a consent verdict of guilty with recommendation that in the verified petition filed in this Court he swore that he had plead "guilty", and, on hearing herein, he explained his agreement to a guilty verdict by stating that he had relied on the assurance of his retained counsel that his sentence would be ten to fifteen years. While petitioner's trial counsel could not recall exactly his conversations with the petitioner, he was positive that he had never entered a plea of guilty for any defendant without the defendant fully understanding and agreeing to such plea. On this record, the Court dismissed his second petition as without merit.

362, cert. den. 366 U.S. 951, 81 S.Ct. 1907, 6 L.Ed.2d 1244; State v. Blassingame (1952) 221 S.C. 169, 171, 69 S.E.2d 601; Driver v. Hinnant (C.C.A. N.C.1966) 356 F.2d 761, 764. Of course, where specific intent is a necessary element, drunkenness "may reduce the degree of the crime or negative a specific intent" but that is an issue for a jury with the burden of proof on the defendant. Wheatley v. United States (C.C.A.W.Va.1946) 159 F.2d 599, 602–603; People v. Jacks (1954) 2 Ill.App.2d 281, 119 N.E.2d 451–452. Intent is not an essential part of the crime of rape as charged in one count of the indictment against the petitioner (Lovely v. United States (C.C.A.S.C. 1948) 169 F.2d 386, 390; State v. Scarborough (1951) 55 N.M. 201, 230 P.2d 235, 236.) As applied to an assault with intent to ravish charged in the second count of the indictment against the petitioner, intent is in issue but it is generally held that it is to "be ascertained from the commission of some acts at the time of, or during, the assault." 75 C.J.S. § 24, p. 490. See, Kruchten v. Eyman (C.C.A.Ariz.1969) 406 F.2d 304, 310.

In his third petition in the State Court, the petitioner renewed the several grounds for relief which he had set forth in his earlier petitions. The Court held that the previous decisions of the Court had disposed of those grounds and dismissed the petition without an evidentiary hearing.[7]

More than six years after the dismissal of his third State proceeding, and almost fifteen years after his sentence, the petitioner filed his application with this Court for a writ. The Court appointed counsel to represent him and granted a full evidentiary hearing to the petitioner. The grounds on which relief is sought here track in many respects the contentions advanced in the earlier proceedings. I am satisfied that the conclusions of the State Court in those proceedings are sound and are not merely "fairly" but are overwhelmingly supported by the record in such Court. Section 2254(d), 28 U.S.C. And, the evidentiary hearing in this Court re-inforces materially those conclusions. Thus, the petitioner very candidly admitted in this Court that he had agreed to the consent verdict of guilty with recommendation. While at first he was insistent that the complainant against him was not present when he was sentenced, he finally conceded that he wasn't really sure whether she was there or not. He put it that, "If she was there, she didn't say nothing", thereby contradicting his testimony at the second State Court hearing. He followed this up by conceding "Or if I was to see her, I wouldn't know her no way." And, though he complained that the State failed to produce his alleged two companions on the unfortunate night of the crime, he testified that his lawyer sought to find such witnesses and reported to the petitioner that they could not be located. It is plain, therefore, that the evidentiary hearing before this Court adds support to the conclusions reached by the State Court on the issues posed in those proceedings by the petitioner.

The petitioner, through his appointed counsel, has however, raised certain additional grounds for relief not hitherto presented to the State Court. He contends that (1) under the decisions in United States v. Jackson (1968) 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, and Boykin v. State (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, his plea must be held involuntary. He, also, asserts that (2) his sentence and the indictment on which he was sentenced were inconsistent, and (3) that he was arrested without a warrant, held in confinement unduly without being advised of the charges against him, denied bond, and finally, by threats of brutality, was made to sign a "confession". He further contends (4) that he was not advised of a right of appeal.

■ It is a sound general rule, to be scrupulously observed, that, until there has been an exhaustion of State remedies—until the basis for relief in *habeas corpus* has been reviewed by the State Court—this Court should not entertain a petition in *habeas corpus* by a State prisoner. Clearly, these new grounds for relief, raised by the petitioner for the first time in these proceedings, have not been considered by the State Court. Ordinarily, this would warrant the dismissal of this proceeding as premature. Thompson v. Peyton (C.C.A.Va.1968) 406 F.2d 473, 476; Coleman v. Wilson (C.C.A.Cal.1968) 401 F.2d 536, 537, cert. denied, Nelson v. Coleman, 393 U.S. 1065, 89 S.Ct. 719, 21 L.Ed.2d 708. However, it is to be noted that this is the fourth petition filed by the petitioner. It is likely that, if this proceeding is dismissed, new proceedings will follow both in the State and Federal Courts. Judicial economy, both in this Court and in the State Courts counsel the prompt disposition of this petition on substantive and not procedural grounds. After all, the defer-

---

7. See, Holland v. Coiner (D.C.W.Va.1968) 293 F.Supp. 203, 205–206, on federal rule as to successive applications in *habeas corpus*.

ence accorded State Courts is not jurisdictional, but is a matter of comity, and, in particularly exceptional cases, is disregarded. A generally recognized instance in which such deference is not observed arises where the State itself, recognizing the advantages of disposing finally of the grounds posed by the petition, does not object to initial Federal disposition. Though the State at first raised the objection that State remedies had not been exhausted, it, on the hearing, indicated that it did not object to this Court proceeding to dispose of these new issues presented in this proceeding by the petitioner. For this reason, this Court will proceed to consider these new grounds for relief relied on by the petitioner. See, Lovedahl v. State of North Carolina (C.C.A.N.C.1964) 338 F.2d 512, 513; United States ex rel. Davis v. Follette (C.C.A.N.Y.1969) 410 F.2d 1135, 1136; Relford v. Commandant, United States Disciplinary Barracks (C.C.A.Kan.1969) 409 F.2d 824, 825.[8]

▇▇▇ A few of these new claims may be quickly disposed of. It has been repeatedly held that one's guilty plea (if voluntary, and that is a question to be discussed later) generally waives all non-jurisdictional defects in the criminal proceedings preliminary thereto. Bloombaum v. United States (C.C.A.Md. 1954) 211 F.2d 944, 945–946; Sims v. United States (D.C.Md.1966) 272 F. Supp. 577, 587, aff. 382 F.2d 294, cert.

denied 390 U.S. 961, 88 S.Ct. 1062, 19 L.Ed.2d 1158; Fowler v. United States (C.C.A.Fla.1968) 391 F.2d 276, 277; United States ex rel. Rogers v. Warden of Attica State Prison (C.C.A.N.Y. 1967) 381 F.2d 209, 212–214; Fleming v. Klinger (C.C.A.Cal.1966) 363 F.2d 378, 379; Sullivan v. United States (C. C.A.Kan.1963) 315 F.2d 304, 305, cert. den. 375 U.S. 910, 84 S.Ct. 203, 11 L.Ed. 2d 149, reh. den. 376 U.S. 928, 84 S.Ct. 669, 11 L.Ed.2d 628; Watts v. United States (1960), 107 U.S.App.D.C. 367, 278 F.2d 247, 250. Such rule disposes of petitioner's contentions that he was arrested without a warrant,[9] that he was confined for a week in ignorance of the charge against him,[10] and that he was not released on bail.[11] Actually, there is little, or no, basis in fact for these claims, even if they were not foreclosed by the guilty plea. From the first, the petitioner, though imprisoned, was not held incommunicado,[12] was permitted freely to see members of his family and, finally, to consult with his attorney, retained by his family to represent him. Moreover, that the petitioner must have known the charge against him seems plain from his own testimony and his bland profession of ignorance, asserted after three petitions in *habeas corpus,* is patently incorrect. Certainly, at his preliminary hearing, where the father of the victim testified, he knew. In fact, he was quite caustic in his comments on the father, who, it would appear from

8. In *Lovedahl,* the Court, in sustaining jurisdiction, remarked: "No question is here raised of a failure first to pursue all State remedial steps." (338 F.2d p. 513)

9. Watts v. United States (1960) 107 U.S.App.D.C. 367, 278 F.2d 247, 249–250; United States ex rel. Staples v. Pate (C.C.A.Ill.1964) 332 F.2d 531, 533, cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 84.
   See, United States v. Morin (D.C.Pa. 1958) 163 F.Supp. 941, 944, aff. 265 F.2d 241: "Illegal detention is a non-constitutional and non-jurisdictional defect which ordinarily is waived upon a voluntary plea of guilty."

10. Brown v. Allen (1953) 344 U.S. 443, 476, 73 S.Ct. 397, 97 L.Ed. 469; Brad-

ford v. Lefkowitz (D.C.N.Y.1965) 240 F.Supp. 969, 975; United States v. Morin, *supra* (163 F.Supp., at p. 944.)

11. Kent v. United States (C.C.A.Mass. 1959) 272 F.2d 795, 798. Petitioner does not contend that either his incarceration or his failure to be released on bond induced his plea. Actually, he first plead "Not guilty", indicating that neither circumstance contributed in any degree to his subsequent change of pleas. See, Long v. United States (C.C.A.Cal.1961) 290 F.2d 606, 607 (overruled on another point, Heiden v. United States (C.C.A. Ariz.1965) 353 F.2d 53, 55.)

12. See, Ward v. Texas (1942) 316 U.S. 547, 555, 62 S.Ct. 1139, 86 L.Ed. 1663.

the petitioner's testimony, was an eye-witness to the assault; he stated he could not understand a father who would stand by, however great the personal risk, and witness such an assault on his daughter. Moreover, when he was first interrogated and the victim was requested to make an identification, he had to have known what the charge under investigation was. Whether he was kept in ignorance of the charge on which he was held for a week after his arrest or not is, however, of no real moment. Petitioner makes no contention that it was related in any way to his plea. Townsend v. Burke (1947) 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; United States ex rel. McClintic v. Rundle (D.C. Pa.1964) 237 F.Supp. 207, 208; United States ex rel. Staples v. Pate, *supra* (332 F.2d 531). So far as petitioner's claim of denial of bail, it is doubtful that the petitioner was bailable under the charges made against him and with the proof available (Section 20, Article 1, Constitution of South Carolina (1895); Sellers v. State of Georgia (C.C.A.Ga. 1967) 374 F.2d 84, 85; Zide v. Florida (C.C.A.Fla.1969) 410 F.2d 394, 395); but, whether bailable or not, the petitioner never made any attempt to secure release on bail. Apart from the fact that collateral attack on his guilty plea cannot be predicated on these various grounds, the petitioner's own testimony shows conclusively, as I have already

noted, that none of them entered into his determination to plead guilty and under no circumstances, therefore, could afford a basis for relief in this proceeding.[13]

Of course, if a guilty plea is induced by a tainted confession or by any other deprivation of the defendant's constitutional rights it cannot be regarded as a voluntary plea. White v. Pepersack (C.C.A.Md.1965) 352 F.2d 470, 472; Kelly v. Warden (D.C.Md. 1964) 230 F.Supp. 551, 556. But, petitioner's complaint in this case about a confession, first raised in his petition in this Court, comes belatedly; and the long delay of the petitioner in raising it, despite repeated opportunities to raise it in his earlier applications, generates doubt of its genuineness.[14] Prior to the filing of this petition, nothing in the record indicates that any such confession had ever existed, or had been produced or used in any way. In describing the conferences he had with his retained attorney prior to his plea, he makes no reference to any possible confession. More importantly—and this is decisive—the petitioner does not allege or claim, either in his petition or in his testimony, that his guilty plea was induced in the slightest by any possible confession. Absent any evidence of such coercion, the issue of the validity of a confession is foreclosed by the guilty plea.[15] In this state of the record and

13. Townsend v. Burke, *supra* (334 U.S. 736, 738, 68 S.Ct. 1252, 92 L.Ed. 1690); Hardin v. United States (C.C.A.Tex. 1969) 410 F.2d 146; United States ex rel. Staples v. Pate, *supra* (332 F.2d 531); Blood v. Hunter (C.C.A.Kan. 1945) 150 F.2d 640, 641.

14. This doubt is accentuated by the petitioner's own inconsistent statements. In his testimony, he said he signed, by touching the pencil, an alleged confession, the nature of which he did not know, since he neither read nor had it read to him. However, in his verified petition, he denied signing. Perhaps the two statements may be reconciled by assuming that he did not understand that, by merely touching the pencil, he had signed the confession. See, Kelly v. Manning (1960)

237 S.C. 364, 368, 117 S.E.2d 362, cert. den. 366 U.S. 951, 81 S.Ct. 1907, 6 L.Ed. 2d 1244.

Belatedness is always a factor to be considered in assessing the genuineness of a claim. See, for instance, United States v. Gearey (C.C.A.N.Y.1966) 368 F.2d 144, 149–150, cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368.

15. *See,* United States ex rel. McClintic v. Rundle (D.C.Pa.1964) 237 F.Supp. 207, 208.

A comprehensive discussion of when a tainted confession will invalidate a guilty plea and render it involuntary within constitutional concepts appears in the several well-reasoned and thoroughly researched opinions in United States ex rel. Ross v. McMann (C.C.A.N.Y.1969) 409

without even a claim by the petitioner that his guilty plea was induced in any degree by a confession, relief on this ground must fail. Machibroda v. United States (1962) 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473; Lattin v. Cox (C.C. A.N.Mex.1966) 355 F.2d 397, 399.

Similarly, the attack upon the indictment is without any basis. Such indictment clearly charges the crime on which the petitioner was sentenced. Thus, it charges that the petitioner "did make an assault on her the said * * * with intent her the said * * * violently and against her will, then and there feloniously to ravish and carnally know, * * * the said * * *." This is for all practical purposes the exact language of the statute under which the petitioner was sentenced. It is true the indictment includes counts charging rape and assault and battery. This is plainly permissible and customary under South Carolina practice (State v. Collins (1956) 228 S.C. 537, 548–549, 91 S.E.2d 259) and follows the generally sanctioned practice elsewhere. Howard v. United States (C.C.A.Cal.1967) 372 F.2d 294, 301, cert. denied 388 U.S. 915, 87 S.Ct. 2129, 18 L.Ed.2d 1356.

Moreover, it is immaterial whether the petitioner was advised of a right of appeal by his retained counsel. The petitioner's plea was a guilty plea. Petitioner would have no right of appeal therefrom, though, if the plea were involuntary, he might challenge it in a post-conviction proceeding.

This leaves for consideration the new issue of the voluntariness of petitioner's plea under the rulings in United States v. Jackson, supra, and Boykin v. State, supra.

It is the contention of the petitioner that Jackson automatically invalidates his plea as involuntary. The defendant, on the other hand, argues that Jackson is without application in principle to pleas entered under the statute to the violation of which petitioner plead and, in any event, petitioner's plea antedated Jackson which is not to be given a retroactive application. It may be conceded that considerable reason supports the defendant in these contentions. At the time of petitioner's plea, Section 17–533.4 of the South Carolina Code, which was held invalid under State v. Harper (1968) 251 S.C. 379, 383, 162 S.E.2d 712, by reason of Jackson had not been enacted. Petitioner's punishment under the jury verdict to which he consented, was fixed by Section 16–72, Code of Laws of South Carolina (1962). Under this section, petitioner's punishment, whether by death or prison confinement, and irrespective of whether his guilty verdict was by consent or after a full trial, was required to be fixed by the determination of a duly impaneled jury, whose discretion in the premises could not be controlled.[16] Thus, the rights of a defendant charged with a violation of Section 16–72 under his consent to a verdict of guilty were similar to those of one so pleading to a charge under Section 16–52 and, by the reasoning in the Harper decision, would not be

F.2d 1016. So far as this particular issue is concerned, see, particularly, the statement in the majority opinion (p. 1022):

"Therefore a mere conclusory allegation by a prisoner without more, that the existence of a coerced confession induced his guilty plea, in the absence of any particularized allegations as to how that confession rendered his plea involuntary, should not ordinarily be considered sufficient to predicate an order for a hearing."

The real issue in this McMann Case was whether, when a defendant, represented by counsel, voluntarily enters a plea of guilty, he should be held to have waived, after proper legal advice, any right to assail a confession theretofore given by him or to claim involuntariness of his plea by reason of such confession.

16. State v. Worthy (1962) 239 S.C. 449, 467–469, 123 S.E.2d 835; State v. White (1965) 246 S.C. 502, 507, 144 S.E.2d 481; In re Anderson (1868) 69 Cal.2d 613, 73 Cal.Rptr. 21, 447 P.2d 117, 123–128; Cf. Winston v. United States, 172 U.S. 303, 313, 19 S.Ct. 212, 43 L.Ed. 456.

"unconstitutional under the test applied in Jackson." (p. 383 162 S.E.2d p. 713) [17] The *Harper* decision has been accorded some favor at the hands of the commentators and accords with some State authorities.[18] Moreover, a number of well-reasoned decisions have held, as the defendant contends, that *Jackson* is not to be given a retroactive application.[19] But, in actual practice, it seems relatively unimportant whether *Jackson* be given a retroactive application or even whether it is strictly applicable to the petitioner's plea. Even under those decisions that deny retroactivity to *Jackson*, it seems accepted that the principle enunciated in *Jackson* is a factor to be considered and duly evaluated in "the totality of circumstances" in the case, in ascertaining whether in fact the petitioner's plea was voluntary. McFarland v. United States (D.C.Md. 1968) 284 F.Supp. 969, 977; Pindell v. United States, *supra* (296 F.Supp. 751, 753).

The proper rule to be applied in all cases, whether the plea was entered before or after *Jackson,* and whether *Harper* is a proper construction of the scope of *Jackson,* was stated with precision in Alford v. North Carolina (C.C. A.N.C.1968) 405 F.2d 340, a case in which the plea was entered in 1963, almost five years before *Jackson.* There, the Court held that *Jackson,* while not automatically invalidating a guilty plea in a capital case where a guilty plea assured a prison sentence and a not guilty plea exposed the defendant to the danger of the death penalty, did render a guilty plea in such a case involuntary and invalid if the defendant's "principal motivation to plead guilty or to forego a trial by jury was to avoid the death penalty." (p. 347) Accordingly, the issue which must be settled in all cases such as this is "the extent to which, if at all, petitioner was moved to plead guilty because of the incentive which the North (South) Carolina statutory scheme

17. The Court's reasoning is summarized in its opinion thus: "The question before us then is whether the provisions of our statutes render the death penalty for murder in South Carolina applicable only to those defendants who assert the right to plead not guilty. If they do, then the *Jackson* decision renders the death penalty provisions of the statutes in question unconstitutional in so far as they effect such result. On the other hand, if they do not so operate, the ruling in *Jackson* does not apply.

\* \* \* \* \*

" \* \* \* A plea of guilty affords no automatic immunity from the death penalty. On the contrary, the one who pleads guilty, as well as the one who pleads not guilty and is found guilty by the jury, can escape the penalty of death only after a jury has heard the matter and recommended mercy. Therefore, the death penalty is not applicable only to those defendants who assert the right to contest their guilt before a jury; and Section 16–52, standing alone, is not unconstitutional under the test applied in Jackson."

Section 16–72 is similar to Section 16–52 and the same reasoning would be applicable to a plea of either rape or assault with intent to ravish as to a plea of murder. To what extent a plea of

guilty, which is submitted to the jury under Section 16–72 with the agreement that the jury shall return a recommendation of mercy, hardly seems to be covered by the ruling in *Harper.* See, State v. Worthy, *supra,* as quoted in Note 1.

18. See, 54 Cornell Law Rev. 453–6; 47 N.C.L.Rev. 421; cf., United States v. Jackson, *supra,* at p. 582, 88 S.Ct. at p. 1217 (390 U.S.): "In some State, for example, the choice between life imprisonment and capital punishment is left to a jury in *every* case—regardless of how the defendant's guilt has been determined."

See, also, Alford v. North Carolina (C.C.A.N.C.1968) 405 F.2d 340, 345, note 14, in which the Court reserved judgment on the conclusion reached by the South Carolina Court in *Harper.*

See, State v. Forcella (1968) 52 N.J. 263, 245 A.2d 181, 189–190.

19. Pindell v. United States (D.C.Conn. 1969) 296 F.Supp. 751, 752–753; United States ex rel. Buttcher v. Yeager (D.C. N.J.1968) 288 F.Supp. 906, 908–909; *contra,* Shaw v. United States (D.C.Ga. 1969) 299 F.Supp. 824, 828; cf., Sims v. Eyman (C.C.A.Ariz.1969) 405 F.2d 439, 445, where the Court stated that the "retroactive effect (of Jackson), are \* \* \* still not clear" followed by a discussion in note 3 in explanation.

supplied to achieve that result." (p. 347)

■ The petitioner's own testimony refutes any claim that his guilty plea was primarily or principally induced by the fear of the death penalty. It is true that, in his hearing in this Court, he testified that his retained attorney, in seeking to induce him to plead, did raise the spectre of the "electric chair", thereby frightening him with this threat of the death sentence. I am not able, however, to place any credence in this testimony. In the first evidentiary hearing given the petitioner in his State Court proceedings in *habeas corpus*, the Court sought earnestly to extract from the petitioner that his attorney had coerced or induced his guilty plea with the threat of the "electric chair". The petitioner consistently denied any recollection of any such threats. Now, ten years later, and after his attorney has demised, and after *Jackson* has been enunciated, he proclaims such threats. This sounds too much like seeking to tailor the facts to fit the law. I cannot avoid the conclusion that the earlier testimony of the petitioner, persevered in under the most persistent questioning by the Court, is far more credible than this belated claim made some fifteen years after his plea.

■ I have not overlooked petitioner's testimony that the jailer, when he returned from his arraignment, made some reference to the death penalty and to another prisoner in the jail, who had been so sentenced. Neither of these references seems to have made any real impression on the petitioner. At least, he does not claim for them substantial motivation for his plea. Actually, petitioner set forth in his testimony fairly clearly the real motivation for his plea. It was not any threat by his lawyer, and not any suggestion by the jailer. He testified flatly that he agreed to enter his plea because of the assurance of his attorney as to the maximum length of his sentence. He said that his attorney told him, "If you cop out, I'll get you ten or fifteen years; fifteen years will be the limit", and, on that basis, he had agreed, "Okay, I'll cop out then." And, when expressing his complaint against his sentence, he put it that "They (meaning his attorney, as he later explained) also made a deal with me and then backed down on the deal with the Court."[20] It is thus plain that the threat of the death penalty, under petitioner's own testimony, was not the reason for his guilty plea and that petitioner cannot found a right to the writ on *Jackson*.

This case is very similar to Breland v. South Carolina, filed August 19, 1969, by the Supreme Court of South Carolina. The plea in that case was entered after the enactment of Section 17–533.4; otherwise, the defendant's plea, entered under Section 16–72, was similar in effect to that entered here. In that case, the defendant's plea, the Court found, was entered "because of the claimed representation to him by his counsel that he would not have to serve any time if that course was pursued" and not because of a "fear of the death penalty." Relying on the reasoning in *Alford,* the Court found that the plea was not invalid under *Jackson*. To the same effect and reaching a like conclusion is McFarland v. United States, *supra* (284 F.Supp., at pp. 977–978).

In *Alford,* where a guilty plea in a capital case assured a life sentence and a not guilty plea exposed the defendant to a possible death sentence, the plea of not guilty was found to be involuntary under *Jackson*, the Court referring specifically to the finding of fact in that particular case that, "No court has ever found that he (the defendant) pleaded guilty other than to avoid possible imposition of the death penalty." (405 F.2d p. 348) And, in note 20, the Court cited the finding of the State Court that the defendant's plea was entered "be-

---

20. See, United States ex rel. Rogers v. Warden of Attica State Prison, *supra.* (381 F.2d 209).

cause the guilty plea allowed him to escape the possibility of the death sentence." Chief Judge Haynsworth, in his dissenting opinion, observed that, "Here the defendant clearly stated when he tendered his plea that he was substantially motivated by the fear of execution if he entered a plea of not guilty." (p. 349) *Alford* thus proceeds upon a factual situation quite different from that presented by the facts of this case.

█ Perhaps, though it is aside from the claim argued, it might be well at this point to consider whether the claim of an alleged assurance by his counsel as to the length of his sentence can warrant any relief in this proceeding to the petitioner. It will be noted that there is no contention that either the Solicitor or the Court gave any assurance to either the petitioner or his counsel. Nor did the petitioner claim that he believed or thought there was such assurance by the Solicitor or the Judge. At best, all petitioner claims is an expression of opinion by his counsel. See, United States ex rel. Bullock v. Warden, Westfield St. Farm (C.C.A.N.Y. 1969) 408 F.2d 1326, 1330. Cf. Townes v. Peyton (C.C.A.Va.1968) 404 F.2d 456, 461; United States ex rel. Thurmond v. Mancusi (D.C.N.Y.1967) 275 F.Supp. 508, 516. It seems clear such a circumstance cannot afford petitioner relief herein. United States ex rel. Toland v. Phimister (D.C.N.Y.1969) 296 F.Supp. 1027, involved an almost identical claim made under very similar circumstances. What was held there would appear con-

clusive in this case. There, the Court said (p. 1029):

"The petitioner's allegation that his attorney assured him he could not be sentenced to more than ten years and did not advise him of a possible increased term because of his prior conviction cannot, of course, be challenged by the state, since the attorney had died when the petitioner brought his state coram nobis proceeding. However, assuming arguendo that the allegation is factually true, it is without federal constitutional substance, since there is no showing of any fraudulent or overreaching conduct by the court or prosecution that induced the guilty plea. United States ex rel. Piracci v. Follette, 284 F.Supp. 267, 269 (S.D. N.Y.1968); United States ex rel. Finn v. Klein, 271 F.Supp. 513, 515 (S.D. N.Y.1967)."

See, also, Meredith v. United States (C.C.A.W.Va.1953) 208 F.2d 680, 682; Sobota v. Rodriquez (C.C.A.N.M.1967) 371 F.2d 909, 910, cert. den. 388 U.S. 918, 87 S.Ct. 2136, 18 L.Ed.2d 1361; Berlanga v. United States (C.C.A.Tex. 1968) 394 F.2d 615, 616; Moore v. United States (C.C.A.Tex.1964) 334 F.2d 25, 26; United States ex rel. Homchak v. New York (C.C.A.N.Y.1963) 323 F.2d 449, 450, cert. den. 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615, reh. den. 376 U.S. 959, 84 S.Ct. 972, 11 L.Ed. 2d 978; Sims v. United States (D.C.Md. 1966) 272 F.Supp. 577, 590–592, aff. 382 F.2d 294, cert. den. 390 U.S. 961, 88 S. Ct. 1062, 19 L.Ed.2d 1158.[21]

---

21. In Pilkington v. United States (C.C.A. Va.1963) 315 F.2d 204, 207, the Court indicated that where a criminal defendant was induced to entry a guilty plea "by statements of the presiding judge or prosecuting officials, *or even under some circumstances of his own attorney,* with regard to the nature of the charge or the possible penalty involved," (italics added) his plea may be rendered invalid. The suggestion in that case that statements made by a defendant's own counsel, as to possible sentence, without any participation by either the Court or the prosecutor, may be a ground for relief from a guilty plea so induced must be taken in connection with the specific finding in that case that the defendant "was misled by the Judge's statement that the maximum penalty could not exceed five years," and the subsequent statement in United States v. Baysden (C.C.A.N.C.1964) 326 F.2d 629, 631, note 3: "The fact that appellant's attorney may have expressed the hope or belief that a plea of guilty would result in a lighter sentence is not professionally improper, nor is it prejudicial or a ground for collateral relief absent evidence that the Government had a part in arousing the expectation of leniency. United States v. Taylor, 303 F.2d 165, 168 (4th Cir., 1962); cf., Pilkington v. United States, 315 F.2d 204 (4th Cir., 1963);

The petitioner, also, takes the position that failure of the sentencing Court to observe the formalities mandated for State Courts in accepting guilty pleas as announced in Boykin v. Alabama (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, invalidates his plea. *Boykin* imposed on State Courts the same burdens applicable to Federal Courts under Rule 11, Rules of Criminal Procedure, as construed in McCarthy v. United States, (1969) 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. However, *McCarthy* has been held not to be retroactive (Holliday v. United States (1969) 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16; Lord v. United States Government, C.C.A.N.C.1969, 412 F.2d 499, filed June 13, 1969; Durant v. United States, C.C.A.Mass.1969, 410 F. 2d 689, 693.) And, by like reasoning, *Boykin* must be deemed non-retroactive.

Prior to *Boykin* and *McCarthy*, the failure of the State Court, and even, it seems, the Federal Court, to conduct an inquiry, as prescribed strictly by Rule 11, into the voluntariness of a guilty plea before accepting same, did not *per se* render the plea involuntary. United States ex rel. Crosby v. Brierley (C.C.A. Pa.1968) 404 F.2d 790, 795–796. Thus, in United States v. Martin (C.C.A.N.C. 1968) 389 F.2d 383, 384–385, the Court said: "Technical non-compliance with the rule (Rule 11), however, is not fatal if the defendant has the information (as to range of penalties arising from a plea of guilty) from his lawyer or others. Only if he was uninformed and if his ignorance or misinformation had a possible bearing upon the voluntariness of his plea is resentencing required."

Specifically, in United States ex rel. Grays v. Rundle (D.C.Pa.1968) 293 F. Supp. 643, 645, it was held that, where the defendant was represented at the time of his sentencing by privately retained counsel,[22] " 'the mere failure of the criminal court to inquire into the voluntary nature of a guilty plea does not automatically render it involuntary.' "[23] See, also, Janovic v. Eyman (C.C.A.Ariz. 1969) 406 F.2d 314, 317. It does seem, though, that the failure of the Court to make such inquiry of the defendant would shift the burden to the State to establish the validity of the plea on the basis of the "totality of circumstances" surrounding the plea. United States ex rel. Bolden v. Rundle (D.C.Pa.1969) 300 F.Supp. 107, 113; cf., United States v. Kincaid (C.C.A.Va.1966) 362 F.2d 939, 941, note 5.

The rule was that the "totality of circumstances surrounding the plea" were to be reviewed and, if, on such review, it appeared the plea was voluntarily and understandably entered, the plea would be sustained. United States ex rel. Grays v. Rundle (D.C.Pa.1968) 293 F. Supp. 643, 645; Brokaw v. United States (C.C.A.S.C.1966) 368 F.2d 508, 510, cert. den. 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed. 2d 344; Gundlach v. United States (C.C. A.N.C.1958) 262 F.2d 72, 76, cert. den. 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255.

A review of the "totality of circumstances surrounding the plea" of the petitioner shows plainly that the State has established that petitioner's plea was understandingly entered. It will be noted that almost fifteen years have elapsed since the entry of petitioner's plea. His

---

Tabor v. United States, 203 F.2d 948 (4th Cir., 1953)."

See, also, Townes v. Peyton, *supra* (404 F.2d at p. 461) ; United States ex rel. Thurmond v. Mancusi, *supra* (275 F. Supp. at p. 516; United States ex rel. Bresnock v. Rundle (D.C.Pa.1969) 300 F.Supp. 264, 270.

22. See, dissenting opinion, Judge Lumbard, in *McMann, supra*, p. 1031 (409 F.2d), to the effect that absent some credible and detailed proof to the contrary, it must be assumed that defendant's counsel had properly advised his client of his rights, of the nature of the charges against him and of the range of penalties.

23. In this case, the petitioner in *habeas corpus* contended that "his rights to due process were violated in that the three-judge panel, before accepting relator's (petitioner's) guilty plea, failed to inquire as to whether he understood the nature and consequences of his plea." (p. 644)

trial counsel is dead.[24] In his second evidentiary hearing in the State Court, petitioner denied that he understood he was pleading guilty and asserted that his counsel had incorrectly and improperly plead him against his wishes. This his trial counsel denied. In his testimony in this proceeding, held almost ten years later, however, he comes forward with a completely contradictory story. He did agree to the guilty plea, he did understand he was pleading guilty but he did so because his trial counsel, now dead, had dangled before him the threat of the death penalty with the alternative offered of a maximum sentence of fifteen years. This altering of his story, patently made to fit the changing legal theories in his two petitions, must raise a real doubt about the reliability of petitioner's testimony in this Court, testimony which I frankly find incredible in the light of his earlier testimony. See, United States v. Sehon Chinn (D.C. W.Va.1947) 74 F.Supp. 189, 191, aff. 163 F.2d 876.[25]

■ The petitioner was represented at his sentencing by retained counsel. The ability and integrity of such counsel were well recognized. It is settled that, as the Court put it in United States ex rel. Nixon v. Follette (D.C.N.Y.1969) 299 F.Supp. 253, 255, "The fact that petitioner was represented by counsel is also entitled to substantial weight in determining the issue of voluntariness."[26] Such counsel must have fully advised the petitioner of his rights. Petitioner conceded at his first evidentiary hearing in the State Court that he knew that, under his plea, he could be sentenced to imprisonment for as much as forty years.[27] He knew his rights; he was not "uninformed". I conclude on the record that the petitioner did knowingly and understandingly enter his guilty plea.

■ One final point remains. It involves a matter not raised by the petitioner or his counsel. The petitioner has never admitted or denied his guilt. He claims that he was too drunk to know whether he did or did not commit the crime with which he was charged. It is not necessary, though, that a defendant admit his guilt as a basis for the acceptance of a plea of guilty. The evidence may be so overwhelming that a plea is well justified. Such circumstances will support a plea under Rule 11, even when the defendant does not concede his guilt. McCoy v. United States (1966) 124 U.S. App.D.C. 177, 363 F.2d 306, 308–309; cf., note 20, Alford v. North Carolina, supra (405 F.2d, p. 348.)

■ The real gravamen of petitioner's complaint seems to be his feeling that, after the service to this point of his sentence, he is entitled to clemency consideration. However persuasive may be the justification for such clemency, it provides no basis for action by this Court but represents a duty devolving on the Executive Branch of the State Government.

Appointed counsel for the petitioner is to be particularly commended for the able manner in which he has presented the petitioner's case. He has shown great diligence in developing every possible means of aiding the petitioner. The Court is grateful to him.

The petition for a writ of *habeas corpus* is denied, and it is so ordered.

---

24. For a somewhat similar factual situation, see, Gallegos v. Cox (C.C.A.N.M. 1966) 358 F.2d 703, 704, cert. den. 385 U.S. 869, 87 S.Ct. 138, 17 L.Ed.2d 97.

25. Of course, if the petitioner, while not altering his testimony on the motivating purpose of his plea, were raising for the first time a legal point freshly adumbrated in *Jackson*, it would be of no moment that he had not raised the point earlier; he could hardly be required to anticipate the decision in *Jackson*. See,

Alford v. North Carolina, *supra* (405 F. 2d at pp. 342–343). But, when he alleges facts that are contradictory of facts to which he has earlier testified, the Court cannot disregard such discrepancy and is entitled to question the later testimony, especially if its change would fit into some later decision.

26. See, also; United States ex rel. Grays v. Rundle, *supra* (293 F.Supp. 643, 645).

27. See note 5.