**James Woodrow DEESE, Movant,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 69–299.**

United States District Court
D. South Carolina,
Columbia Division.

Sept. 6, 1969.

Joseph E. Hines, Jr., Spartanburg, S. C., court-appointed attorney for movant.

Joseph O. Rogers, Jr., U. S. Atty., Marvin L. Smith, Asst. U. S. Atty., Columbia, S. C., for respondent.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

This proceeding, under Section 2255, 28 U.S.C., by a federal petitioner, serving a twenty-three year sentence imposed by this Court at Columbia, on October 26, 1959, following a guilty plea to a charge of armed bank robbery (Sections 2113(a) and 2113(d), 18 U.S.C.) seeks the vacation of a plea of guilty as entered involuntarily and without his understanding or consent.

Counsel was appointed for him and a full evidentiary hearing had on August 25, 1969, in Spartanburg, South Carolina.[1]

At the time of his arraignment on this charge, the petitioner was already no stranger to the criminal law. Beginning in 1948, he has plead guilty and served time for the commission of some seven crimes of high and aggravated nature. Actually, he had been released from prison only four months prior to the commission of the crime to which he plead guilty in the prosecution herein involved.

He has not denied at any time that, using a sawed-off shotgun, he, along with confederates, did rob the Bank of Kershaw at Kershaw, South Carolina, as charged in the indictment to which his plea was had. After the robbery, he sought to escape in a car but, in some way, wrecked it. He then endeavored to stop a passing motorist and when the motorist, after first slowing down, failed to stop, he shot out the back window of the car.

After he was apprehended, he gave a voluntary statement to the FBI, admitting freely and fully his guilt. In such confession, he explained that he had been drinking beer and vodka before the robbery. His confederates were arraigned and plead guilty first: One was given a prison sentence of eighteen (18) years and the other one, a juvenile, was, committed to the custody of the Attorney General until his twenty-first birthday. Prior to his arraignment, counsel was appointed for petitioner. Upon his arraignment, he along with his appointed counsel, requested that, before he was called on to plead, he be placed under psychiatric observation to determine whether he was subject to periods of temporary insanity and mental irresponsibility. As a predicate for such request, the petitioner stated that he had begun having "periods of black-outs since 1955". He claimed a lack of memory during these "black-outs". With particular reference to the robbery charged in his indictment he said he had "a recollection of participating in the bank robbery, your Honor, but it is more like I was a spectator than I was an actual participant in the crime". He

---

1. Because of the nature of the charges, an evidentiary hearing seemed proper. See, Lovedahl v. State of North Carolina (C. C.A.4, 1964) 338 F.2d 512, 514; Hilliard v. United States, C.C.A. S.C., Aug. 25, 1969, Memorandum Decision.

subsequently described his condition as "more like a dream" and stated it had begun on "a Friday before this occurred on Thursday". At no time did he refer to benzedrine or attribute his condition to any form of drug. His counsel based his application for a psychiatric examination on the benefit it would provide in enabling him to know how to advise the petitioner in his rights and particularly on his plea to the indictment. Acceding to this request, the Court ordered the petitioner given a thorough psychiatric and mental examination. Such examination continued over a period of observation for some forty days.

Almost five months later, the petitioner was brought again before the Court to enter his plea. At this time the District Attorney called to the Court's attention the favorable report on the mental examination of the petitioner. The Clerk thereupon inquired of petitioner's counsel whether petitioner was "familiar with the charges contained in this indictment". Receiving an affirmative reply and being advised that the petitioner waived formal arraignment, the Clerk asked how the petitioner plead. Counsel answered, "He pleads guilty as charged".

A considerable colloquy between the Court and petitioner's counsel, in which petitioner participated, followed. In the course of that colloquy, during all of which petitioner was an interested spectator and sometime participant, petitioner's attorney stated that the petitioner had told him that for "a long period of time" he had taken benzedrine tablets "but", he had discontinued such habit "for some time before this happened, but he thinks that may have had something to do with his mental condition at the time (of the crime)". His attorney added that, "However, he (the petitioner) does recognize that under the eyes of the law that he is guilty. And, he is pleading guilty as such to the charge before the Court. * * * He is charged with a very bad crime. We know that—And I have told him that he is going to get a sentence, which

he knows. And, he knows that he will get somewhat of a stiff sentence." It then developed that the petitioner was wanted both in Oregon and South Carolina for parole violations, and the petitioner himself expressed concern "that if a person had a detainer against him— I mean, if they were wanted in another place—that they became ineligible" for parole. For this reason, leniency in sentence was requested for the petitioner, whose qualifications for parole, because of the detainers, would be far less favorable than that of his confederate who had received, as previously pointed out, an eighteen year sentence. After comparing the relative responsibility of the petitioner and his confederate for the crime and being advised that the petitioner, during the robbery, had hit one of the persons in the bank with "a shotgun" and had "punched another in the neck", and, following the robbery, had "shot the back glass" out of a car that would not stop to pick him up, the Court indicated that he felt that the petitioner was more involved than his confederate, who "didn't do anything except gather the money". However, the Court evidenced a strong and compassionate disposition to fashion his sentence so that the detainers outstanding against the petitioner might not deter him from securing favorable parole action at such time as the Board of Parole deemed it appropriate. Sentence was thereafter imposed with such provision. Following the sentence, the petitioner was transferred to the Atlanta prison where he has been since.

Following his transfer to Atlanta, the petitioner filed two earlier petitions for modifications of his sentence with this Court. In the first, he sought credit for prison time prior to sentence. The second attacked the preference in sentence given his confederate, contending that the difference in their sentences represented a denial of "the equal protection of the laws". In neither of those petitions did the petitioner allege that his plea of guilty was involuntary or that his attorney had failed in any particular to

state accurately his (the petitioner's) position at his sentencing.

■ The petitioner now asserts that he was under the influence of benzedrine when he was sentenced, that, irrespective of what his attorney stated to the Court, he did not understand he was pleading guilty or so intend,[2] and that, on the contrary, he intended to plead not guilty because of temporary mental irresponsibility. He makes no contention that his plea was coerced in any way. At the evidentiary hearing he raised the point that there was not compliance with Rule 11, Rules of Criminal Procedure, in the acceptance of his plea.[3]

■■ The two contentions really present largely related factual issues. Whether under Rule 11, as it existed in 1959, or under a claim of mental incompetency to stand trial, the test of the validity of petitioner's plea is largely alike; it turns, in either case, on the capacity of the defendant to understand intelligently the proceedings and the charges against him. Thus, under Rule 11, as it existed in 1959, the Court was charged with the duty of ascertaining that a defendant's guilty plea was made voluntarily [4] with an intelligent understanding of the nature of the charge

against him.[5] In similar terms, the test of when a defendant has the competency to stand trial, is " 'whether he (the defendant) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " Dusky v. United States (1960) 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. In short, under one principle, the test is: Did the defendant have the competency to understand? Under the other, the test is: Did he understand? If either he lacked such competency or did not intelligently understand the proceedings resulting in his plea of guilty, he would be entitled to relief under Section 2255. United States v. McNicholas (C.C.A. 4, 1962) 298 F.2d 914, 916, cert. den. 369 U.S. 878, 82 S.Ct. 1150, 8 L.Ed.2d 280; Nelms v. United States (C.C.A. 4, 1963) 318 F.2d 150, 153.

■ I am convinced the record abundantly establishes, and I do find, that the petitioner, in entering his plea of guilty herein, did have the mental competency to enter such plea, did fully and intelligently understand the charges against him, and did enter his plea voluntarily.

2. Any claim of intoxication, whether from alcohol or benzedrine, as a defense to the charges in the indictment against the defendant cannot be raised or considered in a motion to vacate a plea. Davis v. United States (C.C.A.8, 1966) 358 F.2d 360, 362, note 2; Richards v. United States (C.C.A.8, 1965) 342 F.2d 962, 963; Hallowell v. Hunter (C.C.A.10, 1951) 186 F.2d 873, 874; Berube v. United States (D.C.Cal.1968) 284 F. Supp. 1, 5, aff. 4 Cir., 401 F.2d 773, cert. den. 393 U.S. 1104, 89 S.Ct. 908, 21 L.Ed.2d 798. The issue here concerns solely the defendant's competency to stand trial. As the Court in Winn v. United States (1959) 106 U.S.App.D.C. 133, 270 F.2d 326, 328, cert. den. 365 U. S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812, remarked:

"There is a vast difference between that mental state which permits an accused to be tried and that which permits him to be held responsible for a crime."

3. Rule 11, as it existed at the time of petitioner's plea (i. e., 1959), did not require specifically that the defendant be addressed "personally" on his plea nor was the statement of "the consequences of the plea" demanded; it only required that the Court determine that the plea was entered voluntarily "with understanding of the nature of the charge". The obligation imposed on the Court to address the defendant "personally" and to advise him of "the consequences of the plea" was added by the amendments of 1966. See Wright, Federal Practice and Procedure (1969) vol. 1, p. 354.

4. A voluntary act may be defined as "the product of a rational intellect and a free will". Fowler v. Peyton (C.C.A.4, 1969) 407 F.2d 1329, quoting Blackburn v. Alabama (1960) 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242.

5. So much the law required prior to the promulgation of the Rule. Fogus v. United States (C.C.A.4, 1929) 34 F.2d 97, 98.

■ Petitioner's claim of incompetency is founded upon the alleged use by him on the day of sentencing of benzedrine. While the fact that one has been subjected to a drug is a factor to be considered in determining whether he is competent to stand trial under the *Dusky* test,[6] such fact does not *"per se* render(s) a defendant incompetent to stand trial"; the issue is one still to be resolved upon the record whether, the defendant, despite such drug, still had the competency required under *Dusky*. United States v. Tom (C.C.A. 2, 1965) 340 F.2d 127, motion for leave to file petition for writ of habeas corpus denied, 382 U.S. 912, 86 S.Ct. 303, 15 L.Ed.2d 236; Hansford v. United States (1966) 124 U.S.App.D.C. 387, 365 F.2d 920, 923, reh. *en banc* denied, 127 U.S.App.D.C. 359, 384 F.2d 311.[7] Even assuming that the petitioner, on the day of his plea, had had benzedrine—a contention that obviously the Government cannot counter at this late day—the record, in my opinion, abundantly establishes his competency within the *Dusky* rule.

■ Plaintiff's counsel, who reviewed his case with him and advised him both at his initial hearing and at the subsequent hearing when he was sentenced, testified that there was nothing in the attitude, demeanor or conversation of the petitioner on the day of sentencing to indicate that the defendant was not mentally alert, fully able to consult with his lawyer on his legal rights with a reasonable degree of rational understanding.[8] Counsel is an able and conscientious practitioner of recognized integrity and competency. I am certain that, if there had arisen in his mind the slightest doubt of the petitioner's competency to understand the proceedings and to make rational decisions, he would have refused to enter a plea on the basis of action by the petitioner. His caution and care at the initial hearing indicate that his protection of petitioner's rights was not dealt with perfunctorily by him. Proper

---

6. Pledger v. United States (C.C.A.4, 1959) 272 F.2d 69, 70.

7. In the following cases, pleas from defendants, who claimed they were under the influence of drugs when entering such pleas, were considered:

Sanders v. United States (1963) 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148; United States v. Tom, *supra* (340 F.2d 127) (In this case, it was undisputed that defendant "was taking narcotics at time of trial");

Wade v. Yeager (C.C.A.3, 1967) 377 F.2d 841, 844, cert. den. 393 U.S. 893, 89 S.Ct. 218, 21 L.Ed.2d 173;

United States v. Pledger, *supra*, (272 F.2d 69, 70), and 301 F.2d 906;

Johnston v. United States (C.C.A.10, 1961) 292 F.2d 51, 53, cert. den. 360 U.S. 935, 79 S.Ct. 1454, 3 L.Ed.2d 1547;

United States v. McNicholas, *supra*, (298 F.2d 914);

Sanders v. Allen (1938) 69 App.D.C. 307, 100 F.2d 717, 719–720;

Davis v. United States, *supra* (358 F.2d 360);

Mirra v. United States (D.C.N.Y. 1966) 255 F.Supp. 570, 579–582, aff. 2 Cir., 379 F.2d 782, cert. den. 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667; Hansford v. United States, *supra*, (365 F.2d 920, 923);

Howell v. United States (D.C.Ill. 1968) 282 F.Supp. 246, 248.

8. On the competency of such testimony, despite the attorney-client privilege, see, United States ex rel. Richardson v. Mc-Mann (C.C.A.2, 1969) 408 F.2d 48, 53; United States v. Kendrick (C.C.A.4, 1964) 331 F.2d 110, 113–114; Howell v. United States, *supra* (282 F.Supp. at p. 250.) In the last cited case, the Court remarked: "This type of testimony has recently been allowed in a number of cases, and would seem to be a practical necessity in order for an evidentiary hearing to be complete and accurate when a motion to vacate sentence is brought on the ground of incompetency to stand trial."

Cf., Gunther v. United States (1956) 97 U.S.App.D.C. 254, 230 F.2d 222. This case is unusual. The issue was the mental competency of the defendant to stand trial. On that issue, counsel was appointed. Subsequently, the original counsel was replaced and a new counsel was appointed. The Government sought to examine the first counsel on the very issue in connection with which he was appointed to represent the defendant. This seems quite a difference from the cases cited *supra*.

weight must be given his opinion on the competency of the petitioner at the time of his plea.[9]

■ The District Judge, who accepted petitioner's plea, was a jurist of wide experience in criminal matters and of particularly sound judgment. The petitioner, it is true, entered his plea through his counsel. But he did participate in the Court's discussion of the consequences of petitioner's plea and especially its effect upon the right of parole. The Court thus had an opportunity to observe and appraise the demeanor of the petitioner. If there had been, either in his deportment or in his conversation, any indication that the petitioner was under the influence of any drug that interfered with his ability rationally to protect his interests, the Court, one may safely assume, would not have proceeded and would not have accepted the plea (see, United States v. Bostic (D.C.D.C.1962) 206 F.Supp. 855, 858, aff. 115 U.S.App.D.C. 79, 317 F.2d 143); indeed, it would have been his duty so to have done. Pate v. Robinson (1966) 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815; Townes v. United States (C.C.A. 4, 1966) 371 F.2d F.2d 930, 934, cert. den. 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335; cf. Sanders v. United States, supra (373 U.S. 1, 83 S.Ct. 1068).

The strongest evidence of his competency, however, is supplied by the petitioner himself. It must be recalled that he was no silent and inactive participant in the proceedings. He was alert to advise his counsel of his rights to parole, as those rights were affected by certain detainers outstanding against the petitioner and filed by both Oregon and South Carolina. He showed a singular knowledge of the detainers, the reasons for such and the periods of unserved time involved. He restated to the Court the legal effect of such detainers on his right to parole, should the Court impose, as he knew it would, a prison sentence. In the face of this demonstration of mental acuteness, of awareness of the progress of the proceedings and the consequences of his plea, any claim of incompetency on the part of the petitioner at the time of his sentencing is clearly without merit.[10]

It seems equally clear that, not only did the petitioner have the competency to understand these proceedings, but that he did in fact enter his plea voluntarily and understandingly, with a full knowledge of its consequences, in substantial compliance with Rule 11, as that rule existed in 1959, and as it was construed and applied prior to the decision in McCarthy v. United States (1969) 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, which is applicable only to pleas entered after April 12, 1969. Holliday v. United States (1969) 394 U.S. 831, 833, 89 S.Ct. 1498, 23 L.Ed.2d 16.

■ It was settled in this Circuit, prior to *McCarthy*, that no particular ritual needed to be followed by the District Court in carrying out the mandate of Rule 11. Townes v. United States, *supra* (371 F.2d at p. 939, concurring opinion of Judge Craven); Mayes v. United States (C.C.A. 8, 1949) 177 F.2d

---

9. See, for instances where such testimony was relied on,
United States v. McNickolas, *supra*, (298 F.2d at pp. 915–916);
Sturrup v. United States, (D.C.N.C. 1963) 218 F.Supp. 279, 283;
Lovedahl v. State of North Carolina, *supra*, (338 F.2d at p. 514);
United States v. Kendrick, *supra*, (331 F.2d at pp. 113–114).
Of course, as the Court remarked in Hansford v. United States, (365 F.2d at p. 924, note 11), "the fact that defense counsel did not think defendant incompetent, although of evidentiary value, can never be dispositive."
See, also, Sims v. United States (D.C. Md.1966) 272 F.Supp. 577, 600–603, aff. 4 Cir., 382 F.2d 294, cert. den. 390 U.S. 961, 88 S.Ct. 1062, 19 L.Ed.2d 1158.

10. See, for a somewhat similar situation, involving waiver of counsel, United States v. Smith (C.C.A.4, 1964) 337 F.2d 49, 55, cert. den. 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436.

505, 507.[11] While courts had often counseled strict compliance with Rule 11 as safeguards against subsequent attacks upon the proceedings under Section 2255, Gundlach v. United States (C.C.A. 4, 1958) 262 F.2d 72, 76, cert. den. 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255; United States v. Taylor (C.C.A. 4, 1962) 303 F.2d 165, 169; United States v. Howard (C.C.A. 4, 1969) 407 F.2d 1102, 1104–1105, "Technical noncompliance with the rule, however, is not fatal if the defendant has the information from his lawyer or others. Only if he was uninformed and if his ignorance or misinformation had a possible bearing upon the voluntariness of his plea is resentencing required." United States v. Martin (C.C.A. 4, 1968) 389 F.2d 383, 384–385.[12] See, also, Gundlach v. United States, *supra*, (262 F.2d at p. 76) holding that while presence of counsel did not relieve the Court of its obligation under the rule, it was "a circumstance which may fairly be taken into account in determining the nature and extent of the inquiry to be made."

Accepting the premise that the burden of establishing that the petitioner intelligently understood the consequences of his guilty plea rested on the Government —the rule where there had not been full compliance with Rule 11 (Gundlach v. United States, *supra*, but, cf. United States v. Kincaid (C.C.A. 4, 1966) 362 F.2d 939, 941, note 5), a conclusion hard-

ly justified in this case where there appears to have been compliance with the Rule as it then existed and had been construed,—I find that the Government has fully sustained such burden as stated in *Martin, supra*. Several months before his plea, the petitioner had been given a copy of the indictment. He was not untutored in the criminal law and, as I have said, he was no stranger in the criminal courts. He had had extensive experience with criminal indictments and criminal pleas. He had, as stated, already plead guilty to a number of indictments charging aggravated crimes. He knew the effect of a guilty plea. His appointed counsel testified that he reviewed with the petitioner the indictment and the charges therein included. His counsel, in open court, and in the presence of the petitioner, advised the Court that the petitioner was "familiar with the charges in the indictment" and desired to plead "guilty as charged".[13] The petitioner entered no objection to this statement of his counsel.[14] Later, the Court engaged in a fairly extensive discussion with reference to the petitioner's possible confinement under his plea. There was repeated reference during that discussion that the maximum sentence under the indictment was twenty-five years. The Court remarked in that connection that he was not going to impose the maximum but indicated that his sentence would require twenty-three years, with a

---

11. Cf., McCarthy v. United States (1969) *supra* (394 U.S. at p. 467, 89 S.Ct. at p. 1171, note 20), where the Court said that in all "inquiries" in connection with Rule 11, " 'matters of reality, and not mere ritual, should be controlling.' "

12. United States v. Kniess (C.C.A.7 1959) 264 F.2d 353, 356.

13. On right of Court to rely on representation of counsel under Rule 11 as it existed in 1959, and prior to *McCarthy*, see Munich v. United States (C.C.A.9, 1964) 337 F.2d 356, 360 (overruled on another point, Heiden v. United States (C.C.A.9, 1965) 353 F.2d 53, 55); Brown v. United States (C.C.A.8, 1950) 182 F.2d 933, 934; Merritt v. Hunter (C.C.A.10, 1948) 170 F.2d 739, 741; cf., Note 97 A.L.R. 2d 556; United States v. Shepherd (D.

C.N.H.1952) 108 F.Supp. 721. There was, however, some difference in the decisions on this point and it was in part to eliminate the controversy that the amendment of 1966 was adopted. McCarthy v. United States, *supra*, (394 U. S. at pp. 465–466, 89 S.Ct. 1166); Castro v. United States (C.C.A.9, 1968) 396 F.2d 345, 346.

14. See Taylor v. United States (C.C.A.9, 1950) 182 F.2d 473, 475, cert. den. 340 U.S. 836, 71 S.Ct. 20, 95 L.Ed. 614, in which the Court held that a defendant's understanding of the nature of the charge against him might properly be inferred from statements made in his presence in court by his counsel, to which statements he did not dissent.

See, also, United States v. Moe Liss (C.C.A.2, 1939) 105 F.2d 144, 145.

proviso about parole. As this discussion proceeded, the eligibility of the petitioner for parole under his sentence seemed to have been a point of special interest to the petitioner, who, as we have already observed, had apparently discussed it fully with his counsel before his plea. The petitioner showed much familiarity with the effect of the detainers pending against him upon his eligibility for parole. He clearly anticipated a prison sentence. In the light of this record, it is incredible for the petitioner to argue that he did not intend to plead, or understand that he was pleading guilty.[15] Certainly, if his counsel had plead him against his will or if he had been uncertain, before his plea, of the maximum sentence to which he was exposed by his plea, he had a right during this discussion with the Court and before sentence was actually imposed, when it was plainly evident what his maximum sentence could be and when the petitioner's counsel had repeatedly reiterated petitioner's intention to plead guilty, to have withdrawn his plea under Rule 32(d). See, Kennedy v. United States (C.C.A. 5, 1958) 259 F.2d 883, 885, cert. den. 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982. Such a withdrawal required no particular formality; a mere disclaimer would have been sufficient. The granting of such motion for withdrawal of plea at that time and under those circumstances would have been "allowable as of course, or almost so". United States v. Roland (C.C.A. 4, 1963) 318 F.2d 406, 409. The petitioner did nothing to disclaim his plea; he professed no misunderstanding. His only concern had to do with his desire to be placed on a par with his confederate in parole eligibility and to be assured that he would not have to serve a longer prison term than his confederate.

The petitioner has been imprisoned under his plea and the sentence entered thereon for about ten years. During all that time, his mind, by his own statement, has been clear and he has had no access to benzedrine. He has unquestionably known all that time whether his plea of guilty was knowingly entered or whether, because of his benzedrine addiction, he had acted without understanding. See, Wong Doo v. United States (1924) 265 U.S. 239, 241, 44 S.Ct. 524, 68 L.Ed. 999. He has previously filed two petitions seeking changes in his sentence. In neither of these petitions did he assert that his plea was wrongly entered or that he had not intended to plead guilty; in fact, both assumed the validity of the plea and sought only to secure modifications in the sentence entered on such plea. The fact that petitioner has delayed for ten years to make his present claim of involuntary plea and the fact that in his prior petitions he has assumed that his plea was free of defect and voluntary (while, of course, not to be given controlling weight[16]) are strong and persuasive circumstances against the good faith of the present claim of the petitioner that he did not intend to plead guilty, or understand intelligently that he was so pleading,[17] for, as *Sanders*, quoting (p. 21, 373 U.S., p. 1068, 83 S.Ct.) from Machibroda v. United States (1962) 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473, put it, District Courts in proceedings under section 2255 are not stripped "of all discretion to exercise their common sense". See, Nelms v. United States, *supra* (318 F.2d, at page 154). It is difficult to believe that he would have remained silent so long, if he had been wrongfully or involuntarily plead. His prior petitions for relief to this Court against his sentence attest to his sophis-

---

15. See, Mirra v. United States, *supra* (255 F.Supp. at p. 579).

16. Sanders v. United States (1963) 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148.

17. See, Kesel v. Reid (1960) 109 U.S. App.D.C. 1, 283 F.2d 365, 366, cert. de-

nied 366 U.S. 921, 81 S.Ct. 1097, 6 L.Ed. 2d 244; United States v. Sehon Chinn (D.C.W.Va.1947) 74 F.Supp. 189, 191, aff. 4 Cir., 163 F.2d 876; United States ex rel. Grays v. Rundle (D.C.Pa.1968) 293 F.Supp. 643, 646.

tication in the methods of assailing a sentence under Section 2255. I find it utterly incredible that one as knowledgeable in the law as the petitioner would have endured without complaint for ten years imprisonment under a plea to which he had never consented and which was not voluntary in every sense.

Actually, the petitioner's own description of his condition, as created when he consumed benzedrine, was such as to lend little or no force to his claim of incompetency at trial. The principal symptom he identified was loss of memory. What the connection of this symptom had with the alleged involuntariness of his plea is not entirely clear. It certainly did not prevent him from recalling as in a "dream" every detail of his crime; and while he said it all seemed as if he was a "spectator" and not "a participant" at the crime, he knew that what he had done was "wrong". It is equally certain it did not prevent him from recalling, even ten years afterwards, what had occurred during the taking of his plea. At that time he was conscious of what he had done, that it was wrong and that he was to be punished for it. Even his own depiction of his condition at the time of sentencing thus does not measure up to a legal want of competency to stand trial. In fact, his charge of incompetency is largely a conclusory allegation, which finds support neither in the record nor even in the testimony of the petitioner.

Appointed counsel for the petitioner is to be commended for the able manner in which he has presented the petitioner's case. He has shown great diligence in developing every possible means of aiding the petitioner. The Court is grateful to him.

The petition herein, for the foregoing reasons, I find to be without merit and is accordingly dismissed,

And it is so ordered.